## THOMAS RINGLER ET AL. *v.* IDA RINGLER.

[No. 53, October Term, 1928.]

*Decided January 17th, 1929.*

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*T. L. Richards* and *Geo. W. Legge, Jr.,* for the appellants.

*Finley C. Hendrickson,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The question raised by this appeal is a narrow one. On April 10th, 1914, Sylvester K. Ringler of Cumberland, Maryland, became a member of the relief department of the Baltimore and Ohio Railroad Company, which was organized and maintained for the purpose of providing benefit insurance for such of its employees as became members of the relief department. He was twice married and had two children by his first wife, Thomas Ringler and Ruth R. Kempf, the appellants in this case, and five children by his second wife. In his application for insurance he designated as beneficiaries his wife Ida Ringler and his two children by his first wife, Ruth and Thomas. He remained a member of the relief association, and the insurance continued in force, until his

death, which occurred on July 22nd, 1927. But before his death, on that day, he signed a paper by which he attempted to change the beneficiaries named in his original application, which paper was in the following form: "I, Sylvester K. Ringler do hereby change the beneficiary of my insurance in B & O Relief from the present beneficiary to my wife Mrs. Ida Ringler."

After his death, relying upon that paper, Mrs. Ringler, his widow, notified the railroad company that she claimed the entire amount of the insurance, amounting to $2,500, due from it. But the other two beneficiaries, Ruth and Thomas Ringler, also notified it that they each claimed one-third of that amount on the theory that, under the contract of insurance, the insured had not the power to change the beneficiaries named in his original application until and unless the change was approved by the superintendent of the relief department, and that the paper purporting to effect the change was never submitted to, or approved by, that official prior to the death of Ringler, and therefore never took effect.

In that state of the case, the Baltimore and Ohio Railroad Company filed in the Circuit Court for Allegany County a bill of interpleader against the three claimants, praying that they be required to interplead, and adjust their several claims and demands among themselves, and a decree granting that relief was passed. In that decree it was directed that in the interpleader suit Ruth Ringler Kempf and Thomas Ringler should be plaintiffs and Ida Ringler defendant.

Ruth Ringler Kempf and Thomas Ringler thereupon filed their bill of complaint against Ida Ringler, in which, after setting out certain of the facts to which we have referred, they charged that the "paper * * * purporting to be an application * * * for a change of beneficiaries" was not delivered to the agents of the Baltimore and Ohio Railroad Company until "many days" after the death of the insured, and that under the rules of that company it was absolutely null and void. Mrs. Ringler answered that bill, and in paragraph five thereof alleged, among other facts, that she was married to the insured in 1900; that there were five children born of

that marriage, of whom four were living, the youngest being
fourteen years of age; that one of them, as the result of an
accident, was permanently injured; that she and her husband
in 1923 bought a farm for $6,000, on which they paid $3,000
in cash and gave a mortgage for the balance, on which mort-
gage they had paid $800 at the time of Mr. Ringler's death,
and that these payments were made from their joint savings;
that Ringler was at one time discharged from the employment
of the Baltimore and Ohio Railroad Company, and after his
discharge he informed his wife that he would have nothing
further to do with keeping up the insurance, but that if she
wanted to keep it up she could do so; that later there was an
understanding between them that Ringler should, if possible,
regain his position with the railroad company, and that she
would manage the farm, watch over the education of the
children, and establish a permanent home; that he was,
largely through her efforts, reinstated with the railroad com-
pany; that she did manage the farm and watched over the
education of their children, and that she did out of a joint
fund "make the payments necessary to keep the insurance
from lapsing"; that the paper purporting to change the bene-
ficiaries in the insurance policy was signed voluntarily by
the insured out of the presence of Mrs. Ringler, and witnessed
by Dr. E. B. Claybrook and Dr. W. R. Frantz, and that she
had "reason to believe that the said Sylvester K. Ringler
thought that he was dealing with one who had some official
position with the B. & O. company in having the said Dr.
Claybrook, who was a surgeon for the railroad company, as a
witness. Plaintiffs excepted to that answer on the ground that
the allegations of paragraph five thereof were irrelevant and
immaterial, and also alleged in the same pleading facts which
it was supposed established counter equities. The exceptions
were overruled, and the case set for a hearing on bill and
answer. The effect of setting up in the exceptions matters in
avoidance, which were obviously intended to be a replication
to the answer, and afterwards setting the case down on bill
and answer, operated as a waiver of the exceptions (*Miller's
Equity Proc.*, sec. 255), because a plaintiff ought not to be

permitted to assert that an answer is bad because it is impertinent, and at the same time set up new and additional facts as a reply to it.

The effect of setting the case down for a hearing on bill and answer was to admit all averments of fact in the answer, and to dispense with proof thereof, *Miller's Equity Proc.,* sec. 256, whether the averments were responsive or in avoidance (*Ibid.*) ; so that the facts to which we have referred must be taken as established. Upon those facts the trial court in a very elaborate and careful opinion decreed that the paper changing the beneficiaries under the contract of insurance between Ringler and the Baltimore and Ohio Railroad Company was valid and effective, and awarded the whole amount of such insurance to Ida Ringler the appellee. The appeal is from that decree.

The single question presented by it is whether the paper writing, dated July 22nd, 1927, by which the insured undertook to change the beneficiaries originaly designated in his contract of insurance, ever took effect. The determination of that question turns mainly upon the construction of clauses 18, 58 and 60 of the regulations of the relief department of the railroad company, which are in the following form:

"18. The beneficiary or beneficiaries in any application for full membership, if the applicant is married, must be his wife or his wife and children. If he be single, the beneficiaries must be his father and mother or the survivor. No application will be accepted which does not comply with these requirements unless the superintendent waive the same for reasons satisfactory to him. No one shall be entitled as the beneficiary of a member who is not the widow or a relation not more remote than a first cousin, except in case of the assignment to the superintendent of the natural death benefit to secure a loan from the Savings Feature, or in case of the taking of special natural death benefit for that purpose."

"58. The benefits on account of the death of a member will be paid to the beneficiary designated in the ap-

plication. If none such be living, the benefits shall lapse, and remain for the benefit of all the other members. The superintendent may, in such case, defray the expenses of the member's funeral, so far as he deems proper."

"60. No assignments of benefits or change of beneficiary will be permitted without the written consent of the superintendent, nor shall benefits be subject to attachment or other legal process."

and the following clause in the application which formed a part of the contract of insurance:

"I also agree that the said company, by its proper agents and in the manner provided in said regulations, shall apply monthly in advance from the first wages earned by me under said employment, in each calendar month, sums at the rate of $5.00 per month as a contribution to the relief feature of said department, for the purpose of securing the benefits provided by said regulations, for a member of class E to myself or in the event of my death to my wife Ida and children by former marriage Ruth and Thomas or the survivor or survivors or to whomever I may hereafter from time to time designate in writing by way of substitution, with the written consent of the superintendent; or, if no such beneficiary be then living, to my next of kin (as determined by the laws of the State of Maryland), in accordance with Regulation No. 18—subject to all the provisions and requirements of said regulation."

In dealing with that question it may be assumed that the beneficiaries first named in the insurance contract had no vested interest therein, because not only was the privilege of changing the beneficiary so named reserved to the insured by the contract, but it was also secured by the regulations of the insurer. For while the contract and the regulations imposed certain limitations upon the exercise of that privilege, the beneficiaries had no control of any kind over it, and could not by any act of theirs prevent the insured from exercising it. 37 C. J. 578. But assuming that the insured had the right

to change the beneficiaries first named in the contract of insurance, the inquiry is, was that an absolute or a qualified right and did he ever actually exercise it?

It is conceded that the only thing he did to effect the change was to sign the paper in which he declared that he changed the beneficiary "from the present beneficiary to" his wife, Mrs. Ida Ringler. That paper was addressed to nobody, it was not, during the lifetime of the insured, delivered to the insurer, and it was never approved by it, although it was executed when the insured was on his deathbed, and delivered to a nurse to be delivered to the insurer, and while not directed to the insurer was nevertheless intended for it. It was delivered to the insurer after the death of the insured, which must have occurred shortly after it was executed, but it never was approved by the superintendent of the relief department. It is also apparent that the insured intended to make the change, that he did all that he could to effect it, and that it was not acted upon by the insurer because it did not receive the paper until after the death of the insured.

Upon these facts appellants contend that, whatever the intentions of the insured may have been, he did not in fact change the beneficiaries first named in the contract, because the paper purporting to make the change was never delivered to the superintendent of the relief department during the life of the insured, and was never approved by him, and that therefore the rights of the beneficiaries originally named became fixed at the death of the insured, and could not be affected by any subsequent act of the insurer.

The appellee on the other hand says that the approval of the superintendent was a mere ministerial act, involving the exercise of no discretion, that in signing the paper the insured had done all that he possibly could do to effect the change, and that equity will not permit his will to be frustrated because the death of the insured deprived the superintendent of any opportunity of doing that which he was bound to do if he had had the opportunity, and that it will treat the change as complete and effective.

There is a line of cases which holds that where, under the terms of such a contract as that here involved, a change of beneficiaries is not completed until the company has performed some purely ministerial act in respect thereto, and the insured has done all that he possibly could do to effect the change, but dies before it has been completed, that the fact that the company has not performed the act specified will not prevent the change from becoming effective. 45 *C. J.* 209, note 26. And whilst that rule cannot be said to have been universally accepted, it has been approved by this court. *Daly v. Daly,* 138 Md. 154. It predicates two factors as essential to its operation: (1) that those things prescribed as essential to changing the beneficiaries named in the contract or policy of insurance, which at the death of the insured were incomplete or unperformed, were ministerial in character, and (2) that the insured had done all that he could do to effect the change. *Daly v. Daly, supra.* In applying it to the facts of this case we are not affected by any principle of waiver or estoppel, for while, in a controversy between the insured and a beneficiary, it has been held that the filing of the bill of interpleader may operate as a waiver of any defect in the claim of the beneficiary (37 *C. J.* 585), although there is authority to the contrary, (15 *A. L. R.* 1260, 2 A. L. R. 1680), the better view in our opinion is that it has no such effect in a controversy between beneficiaries claiming under different rights (*Sullivan v. Maroney,* 76 N. J. Eq. 104; *Berg v. Damkoehler,* 112 Wis. 587; *Freund v. Freund,* 218 Ill. 189), and that their respective rights under the contract or policy become fixed and vested at the death of the insured. 45 *C. J., "Mutual Benefit Insurance,"* sec. 167. The application of the exception is limited too by the principle that a mere unexecuted intent to make the change is not sufficient (45 *C. J.* 204), and in some jurisdictions by the principle that the exception does not apply where the contract or policy of insurance, or the regulations of the insurer which are read into it, fix the time when the change shall take effect, and specify the acts which shall effect it. 45 *C. J.* 210. Although

even in respect to these limitations, there is a sharp conflict in the decisions dealing with them, arising as well from a variance in the construction and interpretation of facts in efforts to do equity and justice in particular cases, as from varying views as to the soundness of the principles involved. As, for instance, one line of cases holds that the provisions of the policy or the by-laws of the insurer which fix the manner, method, and time of effecting a change of beneficiaries, are waived by the payment of the fund into court or the filing of a bill of interpleader by the insurer (*Supreme Conclave R. A. v. Capella*, 41 Fed. 1, and cases collected in 2 *A. L. R.* 1683), on the theory that such restrictions are for the benefit of the insurer. Another line holds that in such instances, where the attempted change has not been completed prior to the death of the insured, that the insurer cannot waive the defect or omission so as to affect the rights *inter sese* of hostile claimants to the fund. *Freund v. Freund*, 218 Ill. 189, and cases collected in 2 *A. L. R.* 1682. And that conflict persists through the later cases. See *Thomas v. Locomotive Eng. Mut. Life & Acc. Ins. Assn.*, 191 Iowa, 1152, 183 N. W. 628, 15 A. L. R. 1260; *Grand Lodge A. O. U. W. v. Martin*, 118 Me. 409. So also, while there is no dissent from the principle that a mere unexecuted intent to substitute a new beneficiary is not enough to effect the change, there is a wide difference of opinion as to what is a "mere unexecuted intent." 45 *C. J.*, "*Mutual Benefit Insurance*," sec. 162, notes 68-73. And while the principle that, where the provisions of the policy or by-laws of the insurer prescribe the acts necessary to change the beneficiary named in the policy and the time when such change shall become effective, no change can be regarded as complete which does not comply with those provisions, is generally recognized (*L. R. A.* 1915A, 580), the application of that principle to similar facts has been far from uniform. 34 *L. R. A.* (N. S.) 277. In that state of the law, and in the absence of any decision of this court dealing with the precise question presented by this appeal, after a careful consideration of the reported cases in other jurisdic-

tions and an examination of the underlying and essential elements of the law of contracts, this at least may be said: (1) that in any controversy between the beneficiaries, where the by-laws of the insurer, or the contract of insurance, provide that there shall be no change in the beneficiary named in the original contract unless and until some act involving discretion in respect thereto has been performed by the insurer or its designated agent, that no act on the part of the insured intended to change such beneficiary will be regarded as completed or effective unless such act or acts have been performed during the life of the insured, (2) even though the insured has done what he could to effect the change, and (3) that the insurer cannot waive the performance of such an act by anything it may do after the death of the insured.

Any other construction would deprive the parties to the contract of insurance under consideration of the right to the contract they made by arbitrarily imputing to them an intention and a purpose contrary to the language in which they have expressed that purpose and intention.

Applying that rule to the facts of this case, the controlling question is whether the function of the superintendent of the relief department, in passing upon a request or demand made by the insured for a change in the beneficiary named in the contract, was ministerial, or whether it involved the exercise of a discretion. For the purposes of that question it may be assumed that the insured had done all that he personally could do under the circumstances to effect the change, and that the beneficiary proposed to be substituted was eligible under the by-laws and regulations of the insurer.

When the by-laws of the relief department and the provisions of the contract are examined, it is in our judgment impossible to reach the conclusion that the duty imposed upon the superintendent of the relief department was in any sense automatic or ministerial. In the first place, the original beneficiaries must be either the wife or the children of the insured, and if at his death no beneficiaries within the eligible classes are living, the benefits lapse and remain for the benefit of all the other members, so that each member of the

department is to some extent interested in any change of beneficiaries. In the second place, when the parties have expressly agreed that no change should be made unless with the written consent of the superintendent, we cannot say that they meant that the superintendent was bound to consent to any change which the insured made, so long as the substituted beneficiary was eligible. For if they had meant that, instead of requiring the written consent of the superintendent to any change in the beneficiary, they would have provided such change could be made by the insured at any time so long as the substituted beneficiary was eligible upon giving notice to the company. When, however, they used the words "written consent," they must have meant them to confer upon the superintendent the power to permit or deny the change accordingly as in his discretion he found that the interests of all the parties would be best served. The whole scheme of insurance provided by the. relief department is essentially fraternal, and for the protection of the employees of the railroad company and their dependents, and it contemplates a certain supervisory control vested in the superintendent of the relief department, to be by him exercised so as to best serve the interests of the insured, the beneficiary, and the insurer. Instances might well occur when it would be not only unjust but detrimental to the best interests of the insured and his dependents to permit a change, and since it would be impossible to anticipate the varying circumstances under which applications for such changes might be made, it may be inferred that the policy of the relief department was to commit to some appropriate official the power to permit or forbid them according to the exigencies of each particular case. And while it may be assumed that under that power such an official would not be authorized to act arbitrarily, capriciously, or without some sound and substantial reason, nevertheless it does involve the exercise of some discretion. *Garrett v. Garrett,* 31 Cal. App. 173; *Farra v. Braman,* 171 Ind. 529; *Sheppard v. Crowley,* 61 Fla. 735.

In the case of *Freund v. Freund,* 218 Ill. 189, dealing with that very question, it was said: "In the case at bar, the com-

pany, under the statute, was required to give its consent to the change, and under the contract the company could only indicate its consent to such change by an endorsement in writing upon the policy at the home office. Certainly, the statute meant something when it stated that the right of the assured to change the beneficiary was dependent upon the consent of the company. The giving of consent is not a mere ministerial act, because it involves the exercise of judgment. We do not construe the New York statute as requiring the company to give its consent independent of the exercise of any judgment on its part whether it was right or proper to give such consent. Therefore, the act here required to be done by the company not being a mere ministerial act, the principle invoked does not apply."

That case cannot in principle be distinguished from this, for although there the requirement as to consent was statutory and here it is contractual, nevertheless the real question in both cases was not whether there was such a requirement or how it originated, for its existence was admitted, but, assuming that it existed, what did it mean, and the solution of that question turned in that case as it must in this, on the construction to be given the word "consent." There the court held that the power to "consent" was not ministerial, and in this case the learned trial judge apparently reached the same conclusion, for in his opinion he said: "It is not difficult to suppose a case in which there might be an exercise of judgment, and section 18 provided for the exercise of judgment in a certain class of cases. There might be an effort, for instance, to substitute a beneficiary who is a wife in name but not in fact, or a mistress, or a child who is an adult and prosperous to the exclusion of infant dependent children, but in this case the most highly favored beneficiary is involved— the mother of the dependent children of the deceased, the mother of a permanently crippled child, in the place and stead of two grown matured children, an adult son and an adult, married daughter." But appellee in this case seeks to avoid the force of that conclusion by urging that under the circumstances the superintendent would have approved

the change. But the question is not whether he should have consented to the change, or whether he would have consented to it, but whether the power to consent conferred by the contract was ministerial. And as it cannot be supposed that it was intended that the meaning of the language of the contract was to be changed with every change in the circumstances under which it might be applied, if the parties meant, as the trial judge correctly decided they did mean, to confer upon the superintendent the right to exercise his judgment and discretion in any case, then necessarily they conferred upon him the right to exercise it in all cases, and the power was not ministerial.

In this case it is conceded that not only did the superintendent not consent to the change, but it is also conceded that through no fault of the insurer he was never given an opportunity of considering the question at all prior to the death of the insured. In our judgment therefore the change of beneficiaries was never completed, and the fund should have been distributed to the beneficiaries named in the application for insurance upon which the contract of insurance was based.

Such cases as *New York Life Ins. Co. v. Flack*, 3 Md. 341 and *Daly v. Daly, supra,* and *Reliance Life Ins. Co. v. Bennington,* 142 Md. 370, are not controlling. In the first cited case, Flack assigned to his wife a life insurance policy, but the company was not notified of the assignment until after his death. The policy contained this clause: "if assigned, notice to be given the company." No question of "consent" was involved, nor was there any requirement as to the time when the notice should be given, and the court held that a notice given on the day of the death of the insured was sufficient. In *Daly v. Daly,* the insured had an unqualified right to change the beneficiary named in the policy under consideration, but the policy provided that the change should only "take effect" upon "the receipt of the request for change at the home office of the society." Daly at the time the policy was issued was engaged to be married and desired to name his fiancée as beneficiary, but being unable to do that under

the rules of the Standard Oil Company, to which the Equitable Life Insurance Company had issued a group insurance policy, under which Daly was insured, he named his father. Later, after he was married, he delivered the certificate or policy to his wife, and applied to a Mr. Spear, an employee of the Standard Oil Company who had charge of the benefit insurance department of that company, to change the beneficiary in his certificate from his father to his wife. Spear said he could not make the change because he had not the necessary blanks, but that he would furnish the applicant with one when they arrived. He failed to do that, however, and in the meantime Daly died. It also appeared that, upon the marriage of an insured employee, the company required him to make his wife the beneficiary of his insurance. Upon those facts it was held that, since the insured had done all that he could to effect the change, and that since the only act needed to complete it was purely ministerial, that equity would treat it as completed and effective. That case is distinguished from this by the controlling fact that there the unperformed act was ministerial, while here it is not. And although the court in that case noted that *Freund v. Freund,* *supra,* was contrary to its conclusion, it did not disapprove the conclusions reached in it upon the question involved in this appeal. Another distinction between the *Daly Case,* as well as *John Hancock Mut. L. Ins. Co. v. White,* 20 R. I. 457, *Nally v. Nally,* 74 Ga. 669, and *Reliance Life Ins. Co. v. Bennington, supra,* is that in those cases the request for the change had been given either to the insurer or its agent during the life of the insured, and that failure to act on it was due to the neglect or inattention of the insurer.

For the reason given it follows that the decree appealed from must be reversed, and the case remanded that a decree may be entered in conformity with the views herein expressed.

> *Decree reversed and case remanded that a decree may be entered in conformity with the views expressed in this opinion, costs to be paid from the fund.*