UNIVERSAL CREDIT COMPANY *v.* MORRIS MARKS ET AL.

[No. 93, October Term, 1932.]

132

*Decided January 19th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Palmer R. Nickerson,* with whom was *Paul F. Due* on the brief, for the appellant.

*Samuel Krelow,* with whom was *Melvern R. Krelow* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

The Universal Credit Company began an action of replevin against Morris Marks and Morris Kronberg, copartners trading as Fallsway Auto Radiator, Fender & Body Works, and William McDaniel, in the Baltimore City Court, to recover possession of an automobile alleged to be seized and taken and unjustly detained by the defendants. The chattel was replevied and delivered to the plaintiff, and the two copartners were summoned, but McDaniel was not summoned, and the action proceeded against the copartners, who

pleaded *non cepit,* and property in the partnership. After replication by a joinder of issue on the plea of *non cepit,* and a traverse to the plea of title in the partnership, and issue joined on the traverse, the case went to trial before the court sitting as a jury, and a verdict was rendered in favor of the defendants for the property replevied, or $200, the value thereof, with one cent damages and costs. A judgment was so entered and this appeal taken by the plaintiff. The sole exception is to the refusal of the court to grant the single prayer offered by the plaintiff, which presents a question whose answer depends upon the correct application of statute law to these facts.

One William McDaniel bought a used Ford automobile of the Fordham Motor Sales Company, and possession was delivered to him under a conditional sales contract, which provided for a cash payment on the execution of the contract, and for the payment of the residue of the purchase price in monthly installments. Among the express terms of sale were that the title to the automobile should not pass to the buyer until all sums due under the contract were paid in full, and that the buyer should keep the automobile free from all liens, taxes, and incumbrances, and that the buyer should not remove the automobile from the State of New York, nor transfer any interest therein without the written consent of the seller, whose assignee shall be entitled to all the contractual rights of the seller. The delivery of the automobile was in the City of New York, where the buyer lived and the seller had its place of business. The contract was assigned to the plaintiff by the seller, and was duly recorded, according to the laws of New York, in the City of New York, where the buyer resided, but was not recorded anywhere in the State of Maryland.

At a time when the buyer was in a default in his payments that entitled the seller or its assignee to repossession of the automobile, which neither had enforced, the buyer drove the automobile out of the State of New York and into the State of Maryland, where he had an accident in Baltimore City, which badly damaged the automobile. The buyer sought the

defendants, who were associated in the business of general repair work on automobiles, and who were unaware of the recording of the conditional contract of sale in New York, and requested them to move the damaged automoblie to their garage, and there to make the necessary repairs in order to enable the buyer to take the automobile back to the City of New York. The buyer never returned, and the account for the repair and storage was not paid. After a continuance of the default in the payment of the charge for the repairs and storage, and after a compliance with the prerequisites of the statute in reference to the subject-matter (Code, art. 63, sec. 54 *et seq.*), the automobile was sold to enforce a lien asserted by the garagemen for repair and storage, and was bought at public auction by the defendants; and, on application, the commissioner of motor vehicles of the State of Maryland issued on December 9th, 1931, a certificate of title to the automobile and registration thereof in the name of the defendants as owners. Fourteen days later the action of replevin was instituted by the plaintiff on the theory that it had a superior title which had not been divested by the sale.

Neither the existence of the conditional sale contract nor its recording in the State of New York was known to the garagemen. Nor did the recording of the conditional sales contract in the State of New York affect the garagemen in Maryland with constructive notice. So, the possession and control of the automobile being in the buyer at the time he delivered it to the garagemen for repair and storage, and the injury to the automobile being so extensive and serious as to make it impossible to proceed with the automobile on its own power to the distant residence of the buyer, and the repairs requested and made having arisen accidentally and being limited to what was necessary forthwith to move the automobile back to New York, the defendants, as copartners making such repairs and affording storage thereafter, would have had a statutory lien on such motor vehicle for all rightful charges so incurred, and might have lawfully retained the vehicle until the charges were paid or until the lien was extinguished or discharged, as by the statute was provided, unless the lien

of the garagemen is subordinated by law to the claim of the plaintiff by virtue of its being the assignee of the contract of conditional sale of record in the State of New York. Code, art. 63, secs. 54-58.

The language of the Code, which is in substitution and amplification of the rule at common law, as was declared in the opinion written by Judge Offutt for the court in *Goldenberg v. Finance & Credit Company,* 150 Md. 298, 303, 133 A. 59, is clear to this point: "54. Whenever a motor vehicle or any part thereof is left by the owner or by any other person with his authority, express or implied, in the custody of any corporation, firm or individual, association, or person for repair, rebuilding, storage, or for the purpose of having furnished for on account of the same any parts, accessories, or tires, the corporation, firm, individual, association or person in whose custody said motor vehicle or part thereof is left for all or any of the purposes aforesaid, shall have a lien on said motor vehicle or part thereof for all charges so incurred, and may lawfully retain the same until said charges have been paid, or until said lien is extinguished or discharged as hereinafter provided." As to storage, when goods are kept by reason of bailor's default, see *Benjamin on Sales* (5th Ed.), 825, 826.

No doubt is entertained that the buyer under a conditional sales contract is, to paraphrase a clause of this sentence of section 54, an owner or another person acting in the matter with his express or implied authority. Although the seller has retained the legal title as security for the payment of the residue of the purchase price, the buyer is the substantial owner. It is he who has the control, possession, care, and maintenance of a machine, which was second-hand when bought, and which must frequently require repair that it may continue in operation and be kept in proper condition, and this possession, use, and custody is exclusive of every one else but the seller or its assignee, and of it only if and when he make a default in his obligation to pay or to perform some of the terms of the contract looking to the preservation of the

security afforded by the reservation of title in the article sold. In fact, the law itself prevents any different opinion by prescribing the conditions under which the lien upon the automobile for repair or storage, *inter alia,* is superior or subordinate to the rights of the holder of conditional sale contract by declaring in the succeeding sentence of section 54: "Said lien shall be superior to the rights of the holders of conditional sale contracts, bills of sale, chattel mortgages or other liens or claims of any kind which are not theretofore executed and recorded or filed for record as required by law, but shall be subordinate thereto when the same have been theretofore executed and recorded as required by law." *Goldenberg v. Finance & Credit Co.,* 150 Md. 298, 303, 133 A. 59; *Meyers v. Neeley & Ensor Auto Co.,* 143 Md. 107, 108-111, 121 A. 916.

The statute and the decisions cited make it indisputable that the motor vehicle was left by a person within the meaning of the law in the custody of the defendants for necessary repair, and that the charges therefor, and for the ensuing storage, an item which was not disputed, were a lien upon the motor vehicle which the defendants held. If this lien is superior to the rights of the holder of the conditional sale contracts depends upon whether or not the execution and record of the conditional sale contract in the State of New York, before the services mentioned were rendered, is an execution and recording within the meaning of the words of the act: "executed and recorded or filed for record as required by law," because the conditional sale contract under which the plaintiff derives was never either recorded or filed for record anywhere within the State of Maryland. The problem is solved when the legislative intent of the General Assembly of Maryland is ascertained.

The statute charges the repairman or warehouseman with knowledge of the seller's rights under the conditional contract of sale, if it be executed or filed for record as required by law at the time of the performance of the services, upon the theory that, being then able to obtain knowledge of the con-

ditional contract of sale from the public records, the repair-
man and warehouseman are visited with as much informa-
tion as if the records had been examined and the conditional
contract of sale had been found. *Goldenberg v. Finance &
Credit Company,* 150 Md. 298, 133 A. 59. To have this
effect, however, the instrument must be executed as required
by law, and recorded or filed for record as required by law.
By what law is the test of due execution and of due record
to be applied? Can it mean the law in force with respect to
the execution and recording of contracts of conditional sales
in Maine, California, Texas, Michigan, Florida, or New
York, or in any other state from which the automobile may
be in transitory passage through Maryland? The General
Assembly of Maryland was engaged in legislation affecting
the entire state, and with reference to existing statutes of
this state, and of none other, with regard to the manner of
execution, and the place, time, and method of recording, of
conditional sales contracts, bills of sale, chattel mortgages,
or other liens or claims of any kind. The legislation had no
effect beyond the territorial limits of Maryland, and it con-
cerned, primarily, the proprietors and patrons of a special
class of business supplying and furnishing a definite service
and particular storage within the state. The people in the
State of Maryland are bound to know the law of this state
but of none other, so far as the administration of the general
law of this state is concerned. Furthermore, the law with
reference to the execution and recording of the various docu-
ments of title and of lien, which are the subject-matter under
consideration, is almost wholly statutory, and greatly varies
among the several states. It would be an unreasonable and
unjustified construction that would ascribe to the General
Assembly of Maryland the intention to impute to the pro-
prietors of garages in Maryland a knowledge of the statute
law of another sovereignty in regard to the requisites of the
valid execution and due record of documents of liens or
claims with respect to the subject-matter of motor vehicles,
when, within the limit of time afforded by the exigency of
the situation, the proprietors would generally be without any

138

practicable method of acquiring the information, by either examining or having examined the law and records of the particular foreign state with reference to the existence vel non in that state of a lien upon the motor vehicle. The theory of a constructive notice of a record within the territorial limits of a sovereignty is that the party has had an opportunity of ascertaining the fact with which he is charged by an examination of the public record of that fact, in existence at the time he is so charged. *Gunby v. Motor Truck Corp.*, 156 Md. 19, 25, 142 A. 596; *Meyer Motor Car Co. v. First Nat. Bank*, 154 Md. 77, 81, 140 A. 34; *Stieff v. Wilson*, 151 Md. 597, 600, 601, 135 A. 407; *Finance & Guaranty Co. v. Truck Co.*, 145 Md. 94, 101, 125 A. 585; *Roberts & Co. v. Robinson*, 141 Md. 37, 43, 44, 118 A. 198. It may be said that the proprietor does not have to assume this risk, and that he may decline the work or to furnish the parts, service, accessories, or tires to the foreign motor vehicle. The more sensible and sound construction is that the legislative intent was to assure to the foreign motor vehicle a speedy repair and replacement of parts, storage, accessories, or tires, by securing to the proprietors of garages a lien for the required service or goods until they are paid. This construction has the merit of subserving both the interest of the traveling public and the garage owners.

The statute with respect to conditional sales contracts must be read in association with other related statutory provisions, and then be given its plain and rational meaning in the promotion of the object of the legislation. It is submitted that, after this is done and the statutes are co-ordinated, if the rights and liabiliities, of the class composed of mechanics and sellers of storage and supplies for motor vehicles, are to be determined by superimposing, upon a contract either for services in the repair, rebuilding, or storage of a motor vehicle left in the custody of a garageman for such purpose or for the purpose of being furnished with any parts, accessories, or tires, the statute law of a foreign state, the domestic statute should plainly express this intention. While a court is not at

liberty to put limitations on general words, yet it may usually not enlarge their meaning to express more than is commonly implied. So, whenever in the statutes of any government a general reference is made to law, either implicitly or expressly, it can ordinarily relate only to the laws of the government making such reference. *Houston v. Moore,* 5 Wheat. 1, 42, 5 L. Ed. 19; *Hammond v. Haines,* 25 Md. 562; *Bradshaw v. Lankford,* 73 Md. 432, 21 A. 66; *Com. v. Dana,* 2 Metc. (Mass.) 338; *Brinckerhoff v. Bostwick,* 99 N. Y. 185, 1 N. E. 663, 665. The laws of one state are foreign to other states, and the courts of one will not take judicial notice of the laws of any other. *Sutherland on Statutory Construction,* secs. 12, 22, 189.

So, logically, when section 54 of article 63 erects as a condition for preference to the lien thereby given that certain named documents of title shall have been "theretofore executed and recorded * * * as required by law" it follows that the law of the State of Maryland is specified. A reference to the statutory prerequisites in the matter of the execution and record of the specific instruments mentioned in section 54 will serve to demonstrate the validity of this construction.

The provision with respect to bills of sale is that it shall be recorded in the county or city where the vendor or donor resides, which requirement is in conformity with the doctrine that the situs of personal property follows the residence of its owner. *Praeger v. Implement Company,* 122 Md. 303, 308, 89 A. 501. However, if the vendor or donor resides out of the state, and the personal property conveyed is located in this state, the bill of sale shall be recorded in the county or in the City of Baltimore, accordingly as the personal property is located. No matter which may be the place of record, the bill of sale must be recorded or filed for record within twenty days from its date. The statute further prescribes that a chattel mortgage must be recorded where a bill of sale of the same personal property should be recorded; and this was true of the instrument in writing whereby a conditional contract of sale of personal property is evidenced until the passage

of the Acts of 1931, ch. 402, pp. 1050, 1051, when the law was modified to make the place of record in the office of the clerk of the Superior Court of Baltimore City, or in the office of the clerk of the circuit court of the various counties, in accordance with where the vendee may reside, or, in the case of a corporate or partnership vendee, where such vendee has its principal place of business in the State of Maryland. Code, art. 21, secs. 44, 45, 48, 49, 55 (Acts of 1931, ch. 402); *Tyler Co. v. O'Ferrall*, 153 Md. 355, 138 A. 249; *Pleasanton v. Johnson*, 91 Md. 673, 47 A. 1025.

It is apparent that the terms of section 54, conferring a priority upon certain specified documents of title over the lien created in favor of garagemen, had no reference to a conditional sales contract of a nonresident vendee, while driving an automobile in temporary use of the public highways of the state.

In the instant case, the seller of the automobile and the buyer, as well as the assignee of the seller, were at the time of the contract, and subsequently remained, residents of the State of New York, where the automobile was kept in the possession of the buyer, subject to the terms of a conditional sales contract which was properly recorded in accordance with the laws of the State of New York. The contract and its assignment were offered in evidence, and among the provisions was one that the buyer should keep the automobile free of all taxes, liens, and incumbrances, and should not remove it from the state. This promise not to remove did not confine the buyer of the automobile within the territorial limits of the State of New York in his use of the automobile, but was entirely consistent with driving across the boundary line into another and other states, with the intention of returning to the State of New York. The provision now being considered, whether found in the statute with respect to conditional sales or in the contract, imports the idea of permanence and continuance in the removal. 11-12 *Huddy, Encyc. of Automobile Law* (9th Ed.), sec. 94, pp. 118-121. There is nothing on the record from which it could be held that, at

the time of the accident, in Baltimore, the automobile had been removed within the meaning of the contract. The proof is to the contrary, and shows that the automobile was in transit and temporarily away. *Hare & Chase, Inc., v. Tomkinson* (N. J. Sup.), 129 A. 396; *Endler v. Commercial Credit Corp.*, 105 N. J. Law, 474, 144 A. 582, 583; *In re Bowman* (D. C.), 28 Fed. (2nd) 620, 623, affirmed (C. C. A.) 36 Fed. (2nd) 721.

It is these facts which give character to the case at bar, and distinguish it from *Goldenberg v. Finance & Credit Co.*, 150 Md. 298, 133 A. 59, where the contract was duly recorded in the Superior Court of Baltimore City, and the garageman was charged with notice of this recorded conditional sales contract, which did not in its terms confer upon the buyer the right to subject the chattel to a lien for repairs.

So, the vendee not residing within the State of Maryland, but there temporarily in the use and operation of the automobile in travel, the conditional sale contract on this record was not within the contemplation of the Maryland statute, and, if recorded, would not have affected any one with notice. Since the motor vehicle was left with the garageman by the buyer under circumstances which brought this automobile within the meaning of section 54, so as to give the garageman a lien (*Meyers v. Neely & Ensor Auto Company, supra, Goldenberg v. Finance & Credit Co., supra*), but not under conditions which would make the lien subordinate, within contemplation of the statute, to the claim of the seller of the automobile, the statutory lien of the garageman will be enforced, unless the doctrine of comity shall justify the conclusion that the security, afforded the seller and his assignee by the reservation of title to the automobile until the purchase price and charges be paid, shall prevail over the statutory lien of the garageman for repairs and storage.

In a contract of conditional sale, the law of where it was made and where it is to be performed, as a rule, governs its construction and operation in all states, but the validity of the contract will not be sustained in another state should it

contravene the settled policy of the foreign state. In the case at bar this rule would protect and enforce the rights and interests of the seller or his assignee while the subject-matter of the contract was in transit within this state, in the possession of its buyer, a nonresident of the State of Maryland, provided the giving effect to the laws of the foreign state are not in contravention of the settled law or policy of this state. 1 *Williston on Sales* (2nd Ed.), sec. 329; 3 *Williston on Contracts*, sec. 1792.

The law of Maryland, however, is *prima facie* the law to be applied, and, if the seller or its assignee wishes the benefit of the law of another jurisdiction, the burden is on it to prove the foreign law. *Sutherland on Statutory Construction*, sec. 184. The law of New York provides for the recording of a conditional sales contract. All that the record discloses is that the contract here was properly recorded in accordance with the laws of New York, in the City of New York, the residence of the vendee. Under the law of New York, what effect does this have on the rights of the parties? what lien, if any, results, and, if so, what are the priorities accorded with respect to other lienors and with reference to the liens, if any; of garagemen for repairs, accessories, parts, and storage? In the absence of proof of what is the law of New York, the law of Maryland must be enforced. If the statute law of New York should be construed in that jurisdiction to give to the garageman of that state a prior lien to that of the seller or his assignee under a duly recorded conditional sales contract of a motor vehicle, whose situs is the place of record, this priority would be an implied term of the contract (*Brown v. Smart,* 69 Md. 330, 14 A. 468, 17 A. 1101), and it would be an anomalous situation, if, in disregard of the statute law of the forum and of where the lien of the garageman attached, the courts in Maryland should, on the theory of comity, give to the seller an immunity which might not be accorded him under the law of the State of New York. For this reason, the plaintiff failed in not proving the law of the place of contract to be different from the law

of the forum and of the lien. The importance of the enforcement of this principle is well illustrated by *Bardasch v. Kalisch*, 118 Misc. 119, 193 N. Y. S. 719, where it is held that the right of priority which the plaintiff is asserting in this forum would be denied him by statute in the State of New York. *Wolfman Co., Inc., v. Eisenberg*, 116 Misc. 43, 190 N. Y. S. 259; *Terminal & Town Taxi Corp. v. O'Rourke*, 117 Misc. 761, 193 N. Y. S. 238; *Courtlandt Garage & Realty Corp. v. New York etc. Agency*, 217 App. Div. 4, 215 N. Y. S. 789; *National Surety Co. v. Gotham Garage Co.*, 127 Misc. 422, 216 N. Y. S. 290; 32 *A. L. R.* 1005, 62 *A. L. R.* 1485-1491, notes; 15-16 *Huddy on Automobile Law* (9th Ed.), sec. 68; *Lloyd v. Kilpatrick*, 71 Misc. 19, 127 N. Y. S. 1096; *Willys-Overland v. Prudman, etc., Co.* (Mun. Ct. N. Y.), 196 N. Y. S. 487; New York Statutes, sec. 184, Lien Law, Consol. Laws, ch. 33; 3 *Blashfield, Cyc. of Automobile Law*, ch. 90, sec. 104; *Dimpfel v. Wilson*, 107 Md. 329, 339, 340, 68 A. 561.

In the event the statutory law of New York had been shown to be different from the statutory law of Maryland, in that the rights of the seller under a conditional contract of sale were superior to any subsequently acquired liens, the question would be which of the two conflicting laws should be enforced where the acquisition of the lien of the garageman was for services performed in Maryland, at the instance of the buyer, as the apparent owner or person to contract within the Maryland act, and in order to repair the automobile so that it might be driven back to the residence of its owner in New York City.

The Maryland statute creating the lien was designed to assure to those operating foreign automobiles, in the transitory use of the public ways of the state, the obtention of prompt repair, replacements, accessories, and storage without delay or question, and to make certain that the garageman would be paid or have the means of securing payment for the necessities furnished. The statute was the expression of a public policy. The theory that the workman should be paid

before he deliver what his labor and material have bettered is a sound one. The evil which the enactment was designed to correct in the interest of the class of citizens affected is patent, and will continue, so far as nonresidents using the thorough-fares of this state for motor-vehicular travel and transportation are concerned, if the theory of the plaintiff prevails. Neither the lien, if there be such given by the statute of New York to secure the credit payment for a chattel sold, with title retained as security, nor a contract to that effect made in the foreign state, should have superiority over the subsequent lien which has been acquired in good faith under the Maryland statute, in reliance upon the apparent ownership, use, and control, or implied authority to contract as owner, of the person obtaining the service and delivering the motor vehicle into the possession of the garageman. A different construction would defeat the terms of the statute in force in the state where the artisan's lien was created. *Supra;* and 3 *Blashfield, Cyc. of Automobile Law,* ch. 90, secs. 104, 106, 107.

Upon the assumption that it had been established by proof that the law of the foreign place of the contract made by the nonresident buyer and seller is different from the law of the forum in which the lien of the garageman arose, the law of the latter would prevail. *Amer. Inst. of Law, Restatement of Conflict of Laws,* secs. 52, 289, 299, 494. The principles which determine this conclusion are that the statutory lien of the artisan or garageman is not a matter of contract but of statute law. The lien is not of the right but of the remedy, and is of statutory creation under the law of the state where the contract with reference to the repair, replacements, accessories, or storage of the automobile is made. The lien does not arise by agreement of the parties, but from the exercise of the will of the sovereign state whence it acquires its binding force. *Morley v. Lake Shore etc. Ry.,* 146 U. S. 162, 169, 13 S. Ct. 54, 36 L. Ed. 925; *Anglo-American Prov. Co. v. Davis Prov. Co.,* 169 N. Y. 506, 62 N. E. 587, 88 Am. St. Rep. 608. In *Story's Conflict of Laws,* sec. 323, is found

this quotation from the opinion of Mr. Chief Justice Marshall in *Harrison v. Sterry,* 5 Cranch, 289, 298, 3 L. Ed. 104: "The law of the place where a contract is made is, generally speaking, the law of the contract; *i. e.,* it is the law by which the contract is expounded. But the right of priority forms no part of the contract. It is extrinsic and rather a personal privilege, dependent on the place where the property lies, and where the court sits to decide the cause." *Id.,* secs. 324, 327, 423a, 524-527, 575; *Mack v. Roberts Quarries,* 57 Ohio St. 463, 49 N. E. 697; *Walworth v. Harris,* 129 U. S. 355, 9 S. Ct. 340, 32 L. Ed. 712; *Wharton on Conflict of Laws,* secs. 324, 313, 321. Compare *Keener on Quasi-Contracts,* pp. 16-18.

So, the postponement of the claims of the owner or seller of a motor vehicle to the statutory lien given a garageman of this state for repairs, supplies, or storage rendered while the motor vehicle of a nonresident buyer, with title in a nonresident seller under a conditional sales contract, was temporarily within the state, is not violative of established principles of comity, but a refusal to abrogate a statute enacted in the formulation and declaration of the settled policy of this sovereignty. If there should be any doubt whether a domestic or a foreign law should prevail, the court, which decides, will prefer the laws of its own country to that of the stranger. *Story on Conflict of Laws,* sec. 28. *In re Johnson, Roberts v. Atty. General* [1903], 1 Ch. 821, at pp. 829, 830.

The existence of the lien under our statute does not legally impair the seller's relation to the motor vehicle. His interest is only affected in the event he should fail to pay the garageman's legitimate charges in the repair, restoration, or storage, which have resulted in the betterment or protection of the vehicle. In the instant case, if he had paid or tendered the amount due, he would have recovered possession of the automobile whose utility had been restored by the labor and replacements of the garageman. See 40 *Harvard Law Rev.,* 812.

To ask a surrender of the protection and relief afforded the

citizen by the statute involves an abrogation by construction of the law with respect to the nonresident users of the highway, and an abandonment of a fixed and sound policy in behalf of a class of skilled mechanics. As is said in *Cooley, Const. Lim.* (8th Ed.), vol. 1, pp. 250, 251: "The extent to which comity will be extended is very much a matter of judicial policy to be determined within reasonable limitations by each State for itself. In the making of contracts, the local law enters into and forms a part of the obligation; and if the contract is valid in the State where it is made, any other State will give remedies for its enforcement, unless, according to the standard of such latter State, it is bad for immorality, or is opposed in its provisions to some accepted principle of public policy, or unless its enforcement would be prejudicial to the State or its people, or would violate its constitution or statutes." *Pleasanton v. Johnson,* 91 Md. 673, 675-677, 47 A. 1025; *Balto. & O. R. Co. v. Glenn,* 28 Md. 287, 322.

*Judgment affirmed, with costs to appellee.*