THE MACCABEES *v.* WALTER LIPPS ET. AL.

GRAND LODGE OF MARYLAND OF THE INDE-
PENDENT ORDER OF ODD FELLOWS *v.*
SAME

[No. 14, October Term, 1943.]

*Decided November 3, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Abram C. Joseph,* with whom was *Alton Y. Bennett* on the brief, for the appellant.

*W. Clinton McSherry* for the appellees.

COLLINS, J., delivered the opinion of the Court.

The Supreme Lodge of the Fraternal Home Insurance Society, a corporation of Philadelphia, Pennsylvania, on the eighteenth day of December, 1917, as a result of an application filed by John T. Lipps of Frederick, Maryland, at Frederick, Maryland, as a member of the Frederick Lodge, issued an ordinary life benefit certificate to the said John T. Lipps in the amount of $1,000, payable at his death to his father, Thomas S. Lipps, subject to such limitations, privileges and conditions as were contained in its constitution and by-laws. The said John T. Lipps paid the premiums on this certificate until November, 1932, when he handed the certificate to his sister, Ada Lipps, and told her that it was to be hers and his brother's, Walter Lipps, if they paid the premiums on it and kept it up, as he could not keep it up and was not able to pay them any longer. He also told her that the beneficiary was not to be changed until after his father's death as he wanted his father to have the money if he predeceased his father, and if his father died before Ada and Walter Lipps died, that Ada and Walter were to be named beneficiaries. In December, 1937, the father, Thomas Lipps, died. Some time between the date of the issuance of the certificate in 1917 and the date of the father's death, the Supreme Lodge of the Fraternal Home Insurance Society, which originally issued the certificate, was absorbed by the Maccabees, a body corporate of the State of Michigan. Shortly after the father's death, the said John T. Lipps signed a formal application with the Maccabees requesting a change of the beneficiaries to the said Walter Lipps and Ada T. Lipps, as provided for in the by-laws of that organization. On February 9, 1938, the change of beneficiary to Ada Lipps and Walter Lipps was approved by the Maccabees in accordance with its by-laws. The brother and sister continued to pay the premiums on the policy until November 6, 1940, when the said John T. Lipps died and when they would have been paid

the $1,000 provided for in the certificate if a claim to the fund had not been made by the Grand Lodge of Maryland of the Independent Order of Odd Fellows, a body corporate, hereinafter referred to as the Odd Fellows or appellant.

The claim of the Odd Fellows was that on November 22, 1933, the said John T. Lipps, being in poor health and unable to work, signed an application with the appellant for admission to its home at Frederick, Maryland, maintained for the purpose of caring for orphans and aged members of the Odd Fellows Lodge. This Home is a very comfortable one and is kept up largely by dues from members of appellant corporation. In the application for admission, he stated that he had made no transfers of any property, either real or personal, or life insurance within the past five years. He stated that he held membership in the Knights of Pythias and in the Order of Red Men. On January 19, 1934, he was admitted to the Odd Fellows' Home, was told by a member of the Board of Directors that he was now in the Home and that he was to give to the home everything he had or everything he may hereafter have, that they would take care of him, provide for him in health and sickness and see that he was decently buried. At that time John T. Lipps signed a paper in which he provided that he did sell, assign and transfer unto the Grand Lodge of Maryland I. O. O. F., Inc., "all my real and personal estate of whatever kind or nature, or wheresoever the same may now be situated, or which may hereafter belong to or found to be owned by or belong to me * * * or any sick, funeral, death benefits and life insurance." After his admission to the Home and the execution of the assignment, he was questioned several times by a member of the board as to whether he had any life insurance policies other than those he had turned over to the Odd Fellows. He said that he did not have any thousand-dollar life insurance policy and never did have one. At the time of his death

in the Odd Fellows' Home in Frederick, where he had been well cared for since 1934 and given spending money, an official of the home found a piece of paper in his pocket from the Maccabees and, as a result, the board of the home notified the Maccabees and sent it a copy of the assignment which John T. Lipps had made to it and made claim for the $1,000 provided for in the policy.

As a result of the conflicting claims, Ada Lipps and Walter Lipps, appellees on one hand, and the appellant on the other, the Maccabees filed a bill of interpleader in the Circuit Court for Frederick County in which it stated that it was unable to decide between the conflicting claims and, while ready and anxious to pay or hold the amount of said certificate for the rightful parties, in view of the conflicting claims, it tendered to pay the amount of the same into court for determination as to whom it rightly belonged and asked that the parties to the conflicting claims be made to interplead. An order was passed requiring the appellant and appellees to interplead, the Odd Fellows as plaintiffs, and Walter and Ada Lipps, as defendants. A bill of complaint was then filed by the Grand Lodge of Maryland of the Independent Order of Odd Fellows, a body corporate vs. Walter Lipps and Ada Lipps setting forth the facts above stated and alleging fraud and asking that it be awarded the proceeds of the policy. An answer was filed by Walter and Ada Lipps stating, among other things, that they had no knowledge of any claim of the Odd Fellows by way of an alleged assignment and asking that the amount of the policy be awarded to them as the named beneficiaries in the certificate. After testimony was taken, partly before an examiner and partly in open court, the chancellor dismissed the bill of complaint of the Odd Fellows and decreed that the proceeds of the insurance policy, after payment of costs, be paid to Ada T. Lipps and Walter Lipps in equal amounts. An appeal is taken to this court by the Odd Fellows from that decree.

Appellant contends that, as the Maccabees is a Michigan corporation, the law of Michigan should control. *Supreme Council v. Brashears,* 89 Md. 624, 631, 43 A. 866; *Supreme Council Royal Arcanum v. Green,* 237 U. S. 531, 541, 542, 59 L. Ed. 1089; *Modern Woodmen v. Mixer,* 267 U. S. 544, 551, 69 L. Ed. 783. It is further contended that under that law, a promise to pay assessments and dues under a policy of benefit insurance, if promisor was made beneficiary, was not sufficient to create in the promisor a vested interest in the certificate and fund or limit the right of the insured to change his beneficiary at pleasure. *Modern Brotherhood v. Hudson,* Supreme Court of Michigan, 194 Mich. 124, 160 N. W. 406. In the present case the original contract was executed by a Pennsylvania corporation at Philadelphia and signed by John T. Lipps at Frederick, Maryland. There is nothing in the evidence to show where the last act was performed that made this a binding contract. These facts cannot be presumed. *Mutual Life Insurance Company v. Mullan,* 107 Md. 457, 463, 69 A. 385; *Sun Insurance Office v. Mallick,* 160 Md. 71, 81, 153 A. 35; *Restatement, Conflict of Laws,* par. 317, 318, 319. It is well settled that a contract of membership in a mutual association includes the constitution and by-laws of the association, whether they are especially referred to in the contract or not. *Yoe v. B. C. H. Ass'n,* 63 Md. 86; *Fuller v. B. & O. E. Relief Ass'n,* 67 Md. 433, 10 A. 237; *Royal Arcanum v. Brashears,* 89 Md. 624, 634, 635, 43 A. 866. The original certificate in this case specifically refers to the limitation, privileges and conditions as contained in the constitution and by-laws. The by-laws provide: "* * * any benefit member may direct any benefit to be paid to his estate or to any person or persons, entity or interest, except as limited by the laws of the State or Province under which the certificate is issued; * * *." It was said in the case of *Universal Credit Company v. Marks,* 164 Md. 130, at page 142, 163 A. 810, 814, which is applicable here: "The law of

Maryland, however, is *prima facie* the law to be applied, and, if the seller or its assignee wishes the benefit of the law of another jurisdiction, the burden is on it to prove the foreign law." By Chapter 131 of the Acts of 1939, known as "The Uniform Judicial Notice of Foreign Law Act," a method is provided to enable the courts of this State to take judicial notice of the law of other states and territories of the United States and of the other jurisdictions having a system of law based upon the common law of England. As was said by Judge Johnson in the case of *Prudential Insurance Company v. Shumaker*, 178 Md. 189, at pages 197 and 198, 12 A. 2d 618, at page 622, which is also applicable here: "* * * but in order for a litigant to invoke the benefits of such foreign law it required (Section 50D) that he give reasonable notice in the pleadings or otherwise to the adverse party of his intention so to do, such notice being a prerequisite to offering proof of such foreign law or asking the court to take judicial notice thereof. In the present case, the question of what constitutes reasonable notice under the statute does not arise, for the reason that the record is entirely devoid of anything tending to show that the privileges accorded by the statute were invoked by appellant, and this we cannot assume. It follows from what we have said that the rights of the parties in the present case must be determined by the law of Maryland." For these reasons this case must be determined according to Maryland law, but if Michigan law were applied, it would make no difference in the decision in this case.

The appellant contends that the brother and sister, Walter Lipps and Ada T. Lipps, are mere volunteers in this case. We cannot agree with this contention. When the policy was delivered to them, there was a distinct understanding that they were to pay the premiums and if the insured, John T. Lipps, died before his father, they were to receive nothing under the policy, but the father was to receive the full amount. Under this agreement they paid the premiums on the insurance policy for

five years until the father's death and after they were made formal beneficiaries, under the rules and regulations of the Maccabees, until the death of the insured. The brother and sister took the risk of the continued solvency of the insurance company and kept up the premiums. The act of the brother and sister was an act done on their part for the benefit of another party. It cannot be contended that there was no consideration. The promise is binding, if upon the faith of it, the consideration is parted with to another as beneficiary. 1 *Williston, Contracts* (Rev. Ed.), Sec. 102; *Amer. Law Inst., Restatement, Contracts,* Sec. 90; *Bowen v. Tipton,* 64 Md. 275, 290, 1 A. 861; *Steele v. Steele,* 75 Md. 477, 23 A. 959; *Devecmon v. Shaw,* 69 Md. 199, 14 A. 464; *Johnson v. Lawrence,* 88 S. C. 496, 70 S. E. 1025; *Davis v. Blum,* 104 S. C. 218, 222, 88 S. E. 465; *Piatt's Adm'r v. United States,* 22 Wall. 496, 22 L. Ed. 858; *Anderson v. Truitt,* 158 Md. 193, 199, 148 A. 223; *Broaddus v. First National Bank,* 161 Md. 116, 122, 155 A. 309.

The certificate provided: "The beneficiary * * * named in this certificate have no vested interest in same, and the beneficiary * * * may be changed at any time * * *, upon complying with the law respecting change of beneficiaries"; "This certificate cannot be assigned or pledged." It was also provided in the by-laws of the Maccabees that any attempt to assign a life benefit certificate or any interest therein by assignment except by change of beneficiary, would be void. The by-laws further provided that, in order to change the beneficiary in the benefit certificate, a written request should be made to the company according to the laws of the association and if the request was in accordance with the laws of the association and all other conditions had been complied with, the approval of the corporation would be endorsed on the certificate and returned; none of which was carried out in the contract with the appellant, but all of which was carried out in the contract with the appellees. The filing of the bill of interpleader by the Maccabees does not operate as a waiver of any

defect in the claim of a beneficiary in a controversy between beneficiaries claiming under different rights. *Ringler v. Ringler,* 156 Md. 270, 277, 144 A. 221; *Scheihing v. B. & O. R. R. Co.,* 180 Md. 168, 174, 23 A. 2d. 381.

Appellant further contends that John T. Lipps was guilty of fraud, which would vitiate the formal change of beneficiary to his brother and sister. The insured was an ignorant man and he might not have considered the benefit certificate as a life insurance policy. Assuming, however, that fraud was committed, there is nothing in the evidence in this case to show that the brother and sister or the insured had any idea that John T. Lipps would enter the Odd Fellows' Home in 1934 when the original contract was made in 1932. Nor is there a scintilla of evidence that the brother and sister knew of the contents of his application for admission to the home or of the assignment which he executed or of the requirements for admission to the home. The agreement having been made with them in 1932, it was just as great a fraud upon them for the insured to have made the transfer to the Odd Fellows in 1934 as the Odd Fellows claim now has been made upon it.

Prior to the Acts of 1912, Chapter 824, Sec. 6A, an association such as the Odd Fellows, appellant, could not, in Maryland, be beneficiary under such a certificate. Beginning with the passage of that Act and with several amendments, the present law as set forth in the 1939 Code, Art. 48A, Sec. 185, provides in part: "Provided, that if after the issuance of the original certificate the member shall become dependent upon an incorporated charitable institution, he shall have the privilege, with the consent of the association, to make such institution his beneficiary." In the case now before us, under the certificate and by-laws it was necessary to first obtain the consent of the Maccabees. There is no claim that a request for change of beneficiary was made by the Odd Fellows. The quoted portion of Article 48A, Sec. 185, *supra,* and the by-laws of the Maccabees places a discretion in the hands of the insurers as to whether the change of beneficiary should be made. As above

set forth, previous to the Act of 1912, an association such as the Odd Fellows could not have been beneficiary and after the passage of that Act, only with the consent of the insurer. In this case, the consent of the insurer to the change of beneficiary is both contractual and statutory. It was said in the case of *Ringler v. Ringler, supra,* 156 Md. at page 280, 144 A. at page 225: "Instances might well occur when it would be not only unjust but detrimental to the best interests of the insured and his dependents to permit a change, and, since it would be impossible to anticipate the varying circumstances under which applications for such changes might be made, it may be inferred that the policy of the relief department was to commit to some appropriate official the power to permit or forbid them according to the exigencies of each particular case. And, while it may be assumed that under that power such an official would not be authorized to act arbitrarily, capriciously, or without some sound and substantial reason, nevertheless it does involve the exercise of some discretion. *Garrett v. Garrett,* 31 Cal. App. 173, 159 P. 1050; *Farra v. Braman,* 171 Ind. 529, 86 N. E. 843; *Sheppard v. Crowley,* 61 Fla. 735, 55 So. 841." *Dale v. Brumbly,* 96 Md. 674, 54 A. 655. It is easy to see that a legislative provision such as this is passed to insure that some one will pass upon the fairness of the transaction. One could hardly contend that this is not sound legislation as many of those whom it seeks to protect are aged and feeble.

We must therefore conclude that the consent to the change of beneficiary was not a ministerial act, but one that involved an exercise of discretion. For the reasons hereinbefore given, in our judgment, therefore, the change of beneficiary to the appellant was never completed, and the chancellor was correct in distributing the fund to the beneficiaries named in the certificate by formal change of beneficiary approved by the insurer. *Ringler v. Ringler, supra,* 156 Md. page 282, 114 A. 221.

> *Decree affirmed. Costs to be paid from the fund.*