BELL ET AL., APPELLANTS, *v.* CRIVIANSKY, RESPONDENT.

(No. 7,258.)

(Submitted September 28, 1934. Decided November 16, 1934.)

[37 Pac. (2d) 673.]

*Mr. W. F. O'Leary* and *Mr. J. Paul Freeman,* for Appellants, submitted a brief; *Mr. O'Leary* argued the cause orally.

*Messrs. Graybill & Graybill,* for Respondent, submitted a brief; *Mr. Leo C. Graybill* argued the cause orally.

112

MR. JUSTICE ANDERSON delivered the opinion of the court.

Philip H. Criviansky, now deceased, was the insured in a policy of life insurance issued by the Aegis Life Insurance Company on August 5, 1913, for the sum of $10,000. Margaret R. Criviansky was the original beneficiary named in the policy. On December 16, 1914, the Central States Life Insurance Company assumed all liability and privileges of the policy, and agreed to perform all of its provisions as insurer. The plaintiffs in this case—four in number—are the children of Philip and Margaret Criviansky. All of them are of age, except one, for whom his mother was appointed guardian. The parents of these children were divorced and Philip Criviansky married the defendant, Susan Criviansky. Subsequent to this marriage, Susan Criviansky became, pursuant to the provisions of the policy, the beneficiary, as duly indorsed thereon.

Difficulties arose between Philip Criviansky and his wife, Susan, and he thereupon, in the month of May, 1932, left her and thereafter resided with his sister. Previous to this time, he had secured various loans on the policy. On June 15, 1932, he wrote the insurance company as follows: "Please send me a blank affidavit so I can change my endowment policy. I have my policy on Susan Criviansky to whom I am married but she kicked me out for no apparent reason. I have four children of my own and I would like to know how to go about this and the laws pertaining to this. Yours sincerely, Philip Criviansky. P. S. I did not receive your answer from the correct account of the policy."

On June 20 the company, in reply to the foregoing letter, answered as follows: "Policy A—2953— On your Life. Dear Mr. Criviansky. In compliance with your request in your letter of June 15, we enclose a formal request for change of beneficiary to be completed and signed by you and returned to us together with the policy so that we may prepare the necessary endorsement. You should give the names of your four children in full and indicate that they are to share alike in the proceeds. The statement of premium payments on your policy was forwarded to you on June 14 and should be in your hands by this time."

The blank mentioned in the communication from the company was a formal request to the company for the change of beneficiary from Susan Criviansky to (blank) children of insured. Appropriate space was left in the blank for the incorporation of the names of the four children of the insured. This letter was received by one of the sons of Philip Criviansky, and was opened by the son in the presence of his father, at Great Falls, Montana, on June 23, 1932. The insured was, on the day preceding the receipt of this letter, removed to the Deaconess Hospital at Great alls, suffering from severe headaches caused by a tumor on the brain. He remained there until his death on June 25, 1932.

This action was brought originally by the plaintiffs against the insurance company to recover on the policy, they assert-

ing that they were the beneficiaries. The company appeared in the action, requested that the defendant, Susan Criviansky, be substituted as defendant in its stead, and deposited with the clerk of the court the sum of $4,785, being the balance due under the terms of the policy after the amount of the loans was deducted from the face thereof. Susan Criviansky was substituted as defendant. It was her claim that she was the beneficiary named in the policy and entitled to the proceeds; the plaintiffs asserted that they were the beneficiaries.

At the time the son of Philip Criviansky opened the letter of June 20 from the insurance company to his father, the latter stated, so the son testified, that he would sign the blank for change of beneficiaries after he returned to the home of his sister. The nurse who had charge of the case at the hospital testified as to his condition on June 22, when he was brought to the hospital at about 1 o'clock in the afternoon, and said that "he was very stuporous and breathing deep as if asleep. He was not awake. * * * He remained in that stuporous condition until the latter part of the afternoon around 4 o'clock or later before he aroused and spoke. * * * He complained of a headache and dizziness that night, but he slept during the night. On the morning of the 23d of June, 1932, I observed his condition. He was rather drowsy and hard to arouse on the 23d, and he persisted in getting out of bed, which he was not supposed to do. * * * He was more or less drowsy from the morning of the 23d on until he died." This witness further testified: "I noticed the condition of his hands when attending him, that he had difficulty in waiting on himself. * * * He had inco-ordination of the hands. That means inability to direct your movements harmoniously. His hands would tremble." In answer to inquiry as to whether, in the opinion of the witness, the insured was able to write a letter from the 23d of June, 1932, on, she said: "In my opinion he was not from the 23d on able to write any letter. I don't think he could from the 23d on write legibly." On cross-examination she said that her opinion thus expressed was not based on any effort to write

a letter, but that he had difficulty feeding himself. He did feed himself when he had help.

Dr. Hitchcock, who was the physician attending the insured prior to and during his stay in the hospital, testified: "I saw him in the hospital. The man was a very sick man. He was suffering with marked headaches and dizziness and at times he went into profound sleep. Of course, during that time he was being given medication. What I mean by that is, we relieved his headaches and, of course, the after-effects of the hypnotics is profound sleep. It was necessary to do this several times during the period he was in the hospital. I saw him every day." The doctor further testified that the insured, when he first examined him, had no inco-ordination of the hands, but later on he did at the hospital; that while he was in that stuporous condition, he would not be able to write or read a letter; and that he was in that condition a good percentage of the time while in the hospital.

The insurance policy provided, with reference to change of beneficiaries, as follows: "If the policy is not then assigned, the insured may change the beneficiary or beneficiaries hereunder upon written request upon the company's form and the return of the policy to the company. Such change of beneficiary shall become effective upon the endorsement of same upon the policy by the company, after which endorsement the policy will be returned to the insured. The rights of any former beneficiary or beneficiaries hereunder shall then cease. * * * The insured under this policy may obtain any benefit herein guaranteed, may exercise every right herein conferred upon said insured, and may enjoy every privilege herein granted, without consent of any beneficiary or beneficiaries hereunder."

The cause was tried before the court sitting without a jury. Proposed findings were submitted by respective counsel, in conformance to the claims of the respective parties. The court made many findings which it is unnecessary to notice here, as no complaint is here made of them. After finding the change of beneficiary made from Margaret Criviansky to Susan

Criviansky, the court found in substance that no further change was ever made by the insured after the change to Susan Criviansky, and that at the time of his death she was the duly designated beneficiary in the policy. As conclusions of law, it was found that the plaintiffs were not entitled to any portion of the funds on deposit in the office of the clerk of the court, and that the defendant was entitled to receive them. Exceptions to these findings were filed and overruled. Judgment was entered awarding the defendant the funds in dispute and dismissing the plaintiffs' complaint. The appeal is from this judgment.

Various errors are assigned; the basic error asserted, however, is the finding of the court that there was no change of beneficiary in the policy from Susan Criviansky to the plaintiffs.

Plaintiffs contend that by reason of the payment of the money into court by the insurance company, the provision of the policy regulating change of beneficiaries was thereby waived; that under the facts disclosed by the record, the insured had endeavored to comply with this provision, and had done all in his power in the circumstances of the case to comply therewith; and that therefore a court of equity will treat that as done which ought to be done, and accordingly decree that the plaintiffs had become beneficiaries of the insurance policy and entitled to the funds deposited in court.

Defendant contends that the facts proved disclose nothing more than an unexecuted intention to change beneficiaries, or, in any event, plaintiffs failed to prove that the insured did everything in his lifetime which he might have done toward complying with the policy provisions for a change of beneficiary, and therefore plaintiffs may not invoke the foregoing equitable rule.

Admittedly, the insured did not comply with the policy provisions with reference to change of beneficiaries in the following respects: (a) He made no written request, upon the company's form, for change of beneficiary; (b) he did not return the policy to the company; (c) he did not deliver

the written request on the prescribed form in his lifetime to the company.

The insurance company, by paying the money into court, waived, so far as it was concerned, the failure of the insured to comply strictly with the policy provisions providing the method for change of beneficiaries, but such waiver could not impair rights which became vested upon the death of the insured. This waiver could not operate to change the beneficiary. (*Knights of Maccabees* v. *Sackett*, 34 Mont. 357, 86 Pac. 423, 424, 115 Am. St. Rep. 532; *Ringler* v. *Ringler*, 156 Md. 270, 144 Atl. 221; *McDonald* v. *McDonald*, 212 Ala. 137, 102 So. 38, 36 A. L. R. 761.) By this indifference on the part of the insurance company, it waived its right to contest the claim of any of the parties to this appeal. (*Styles* v. *Byrne*, 89 Mont. 243, 296 Pac. 577.)

It is argued by plaintiffs that a different rule applies to fraternal insurance policies or certificates, from that applicable to old line or commercial insurance policies. True, certain authorities recognize this distinction. (*Ringler* v. *Ringler*, supra; *Prudential Ins. Co.* v. *Reid*, 107 N. J. Eq. 338, 152 Atl. 454.) Other authorities make no distinction between policies issued by old line or legal reserve contracts and the contracts or certificates issued by fraternal orders or other societies operating under the assessment plan. (*McDonald* v. *McDonald*, supra; *Atkinson* v. *Metropolitan Life Ins. Co.*, 114 Ohio St. 109, 150 N. E. 748; *Mutual Life Ins. Co.* v. *Lowther*, 22 Colo. App. 622, 126 Pac. 882.) Many additional authorities might be cited pro and con on this question. As we view it, there is no distinction between the policies of the two types of insurance merely because one is a contract of a fraternal society, and the other the contract of an old line company.

If, however, under the policy provisions it is declared that a change of beneficiary may not be made until approved by the company, and that approval requires the exercise of discretion so that the officers of the company may, in the exercise of sound discretion, in certain instances refuse to approve a change, we then have a contract or policy of insur-

ance in which a change of beneficiary may not be made until it is actually approved by the company. Many fraternal insurance contracts discussed in the decided cases are of this character by policy provision, by-law, or statute. If under the terms of the insurance contract the insured has an absolute right to change the beneficiary upon complying with certain formal requirements, and the only power in the insurer is to make an appropriate indorsement on the policy or to issue a new one, then we have another class of contracts, such a contract we have here; the function of the officers of the company is purely ministerial. The true distinction, therefore, is dependent, not upon the nature of the company which issues the contract or policy, but upon the provisions of the policy, by-law and statute applicable. There is no distinction between the two types of companies in this regard, if they have identical or similar policies. An examination of the cited cases, bearing the distinction above noted in mind, reveals an absence of nearly all, if not all, conflict.

It is the general rule that in making a change of beneficiaries, ██ ██ insured must proceed in accordance with the regulations contained in the policy, and any material deviation from the course thus marked out will invalidate the transfer. But to this rule certain exceptions have been recognized. (*Knights of Maccabees* v. *Sackett,* supra.) The exceptions to this general rule were first stated in concise form in the case of *Supreme Conclave, Royal Adelphia,* v. *Cappella,* (C. C.) 41 Fed. 1. They are generally recognized by the courts, and are quoted with approval in the *Sackett Case,* supra, as follows: "(1) If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. (2) If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made. (3) If the insured has pursued the course pointed out by the laws of the association, and has

done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued."

The first two exceptions above are without application here. It is contended by plaintiffs that the facts in this case bring them within the third exception. While most, if not all, courts recognize these exceptions, in applying the third they have reached varying conclusions as applied to similar facts. This court in the case of *Knights of Maccabees* v. *Sackett,* supra, gave consideration to this exception. There the insured carried insurance on his life in the plaintiff association in favor of his wife, from whom he had been living separate and apart for some time in the state of North Dakota. The wife resided at Park City, Montana. In May, 1905, his mother at his request called on the local record keeper of the Tent of which the insured was a member, and requested a change of beneficiary from insured's wife to his brother and his brother's wife. The request was accompanied by the required fee, in accordance with the by-laws of the association. The record keeper informed the mother that the request could not be granted, as his brother's wife could not be his beneficiary under the by-laws. A proper application for change of beneficiary was then prepared and transmitted to the insured, who duly executed the same, naming his brother as sole beneficiary, and transmitted the request by mail to the record keeper, who received it some five or six hours after the death of the insured. It was there held that the insured, by failing to deliver this request to the record keeper during his lifetime, failed to effect a change of beneficiary. Apparently, this court in the *Sackett Case,* in giving consideration to this exception, held the phrase "all in his power" to mean "all that the insured might have done," as distinguished from all that was within the power of the insured to do in the circumstances of the particular case.

The books abound with learned discussions by eminent jurists as applied to the varying facts of similar cases. Some courts

have applied the exception rigorously, as did this court. Many courts, however, adopt a more liberal application of the exception. In speaking of the attitude of courts on this question, it is written in 42 Harvard Law Review, page 252, as follows: "In determining whether a change has been made, the courts should, in the absence of any prejudice to the insurer, regard the insured's intention as paramount. Instead, they have been over-zealous in their efforts to protect the original beneficiary, relying for their decisions on the provisions inserted in the policy solely for the insurer's protection."

In the case of *Ruggeri* v. *Griffiths*, 315 Pa. 455, 173 Atl. 396, 397, it was said: "Where an insured wishes to change the beneficiary in a policy and makes every reasonable effort under the circumstances to accomplish that result, the change is effective even though not indorsed on the policy until after the death of insured. This is particularly true where the insurance company waives compliance with a provision of the policy relating to change of beneficiary inserted for its benefit, as was the case here."

In *Northern Life Ins. Co.* v. *Burkholder*, 131 Or. 537, 283 Pac. 739, the insured secured an endowment insurance policy, naming himself as beneficiary. No indorsement for change of beneficiary was ever made on the policy, nor was any attempt to secure such indorsement ever made. It was conceded by all parties to the action that the deceased in his own handwriting wrote the name of his fiancée upon a blank space in the policy left for the name of the beneficiary and immediately preceding the designation of the estate of deceased already in the policy. Oral testimony was received as to the deceased's intention to change the beneficiary. He died four days after he informed his fiancée he was making over his policy of insurance in her favor. It was there held that a change of beneficiary was effected.

In the case of *Taylor* v. *Grand Lodge, A. O. U. W.*, 45 N. D. 468, 178 N. W. 130, 132, it appeared that the insured had a benefit certificate naming certain persons as sole beneficiaries. The certificate was in the possession of the insured. On

January 26, 1919, he was sick at the hospital. On the back of the certificate there was printed a blank form, a request for change of beneficiary. This was filled in, signed, and delivered to the new beneficiary. The insured died on the ensuing day. Eighteen days later the certificate bearing the request for change was presented to the local recorder of the association, who affixed his signature and seal on the back thereof. It was then presented to the grand recorder of the association and payment thereon demanded, which was refused. The court in the course of its opinion said: "We think, in addition to those three exceptions, a court of equity has the power to say in a case such as this that, where the insured has done all in his power, in accordance with the regulations of the order, to designate a change of beneficiary and through unavoidable circumstances and conditions he is unable to complete the designation in accordance with the rules, as in this case, by death, and in equity and good conscience such change ought to be regarded as completed, a court of equity ought to regard that as done which ought to have been done."

The supreme court of West Virginia, in *Union Mutual Life Ins. Co.* v. *Lindamood,* 108 W. Va. 594, 152 S. E. 321, had before it a case in which the insured desired to change the beneficiary in his policy from his mother to his wife. On May 18, 1925, he addressed a letter to an agent of the company directing the substitution of his wife. In the same letter he applied for a loan on the policy. The agent replied promptly, acknowledging the receipt of the letter and instructing the insured how to proceed in order to obtain the desired loan, but not referring to the matter of changing the beneficiary. The policy was mailed to the agent and the loan received. The agent neglected to forward the written request of the insured to the home office. No further attempt was made to effect the change of beneficiary. The insured died September 7, 1928. It was there held that a change of beneficiary had been made.

In many cases where the policy required a surrender of the old certificate, and this was not done by the insured, as it was

in the possession of the original beneficiary and could not be obtained, but the insured had otherwise complied with the policy requirements for a change of beneficiary, the change was decreed. (*Mutual Life Ins. Co. of Baltimore* v. *Burger,* (Mo. App.) 50 S. W. (2d) 765; *McDonald* v. *McDonald,* supra; *Quist* v. *Western & Southern Life Ins. Co.,* 219 Mich. 406, 189 N. W. 49; *Hoskins* v. *Hoskins,* 231 Ky. 5, 20 S. W. (2d) 1029.)

We appreciate the fact that many cases may be found in the books reaching a contrary conclusion to those announced in the cited cases. We have examined and considered all the cases cited by counsel, and many more, relating to the question before us. We think the true rule is that, if the insured has pursued the course pointed out by the laws of the association and has done all in his power, under the facts and circumstances of the case, to change the beneficiary, but before the new certificate is actually issued or the change of beneficiary is indorsed on the old, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued or the indorsement made. If anything is said herein in conflict with what was said by this court in the case of *Knights of Maccabees* v. *Sackett,* supra, such conflicting statement is hereby expressly overruled.

The insured in this case had previously secured a change of beneficiary on his policy, and doubtless knew that it was necessary to secure an appropriate blank form from the company at the time he wrote the letter of June 15, 1932. He requested the company to forward a proper form so that he could change the policy. By the letter he indicated that he desired to change the beneficiary and that it was his purpose to change the beneficiary from his then wife to his four children, although he did not name them. At the time he received this blank, and continuing on to the time of his death, his physical condition according to the record was such as to render him unable to complete and execute the furnished blank form. Testimony of statements made by the insured at the time he wrote the letter corroborating his desire and intention to make

the change of beneficiary was received. We think, under the facts disclosed in the record and in the circumstances of the case, that the insured did all that was within his power to effect the change.

It is argued on behalf of the defendant that the evidence discloses nothing more than an unexecuted intention to make the change. But the insured did more than declare an intention to change the beneficiary. He started to pursue the course provided by his policy to effect the change. The first step necessary was to secure an appropriate blank for that purpose. This he did.

It is urged that the letter of June 15 was not sufficiently certain, in that it did not disclose the names of the proposed beneficiaries. True, it did not. Section 8767, Revised Codes 1921, provides: "That is certain which can be made certain." A similar indefinite request for a change of beneficiary, where it was proposed to name a copartnership as beneficiary without disclosing the names of the copartners, was held to be sufficiently definite and a change decreed, in the case of *Prudential Ins. Co.* v. *Reid*, 107 N. J. Eq. 338, 152 Atl. 454.

The learned trial judge, in making the findings in question, doubtless followed the *Sackett Case*, which, we think, is unsound as applied to the facts in this and similar cases, and we have herein so stated.

The cause is remanded with directions to the district court of Cascade county to find that a change of beneficiaries was made by the insured to the plaintiffs, and that it be adjudged that plaintiffs are entitled to the funds, the proceeds of the insurance policy now on deposit with the clerk of that court, and that defendant is not entitled to any part or portion thereof.

Mr. Chief Justice Callaway and Associate Justices Angstman, Matthews and Stewart concur.

Rehearing denied December 1, 1934.