No. 91-483

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

BURKE A. ESCHLER, LORI L. ESCHLER
and JAMI G. ESCHLER, individually
and as Co-Personal Representatives
of the ESTATE OF JAMES P. ESCHLER,
Deceased,

and

SHARON L. ILLE,

Plaintiffs and Appellants,

-v-

JANET ETHEL ESCHLER and MUTUAL BENEFIT
LIFE INSURANCE COMPANY, a New Jersey
Corporation,

Defendants and Respondents.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable G. Todd Baugh and Maurice Colberg,
               Judges presiding.

COUNSEL OF RECORD:

       For Appellant:

              Allen D. Gunderson, Todd D. Gunderson, Gunderson Law
              Firm, Billings, Montana, for Sharon L. Ille; Jerome
              J. Cate, Cate Law Firm, Whitefish, Montana for Burke
              A. Eschler, Lori L. Eschler and Jami G. Eschler

       For Respondent:

              Donald L. Harris, Steven R. Milch, Crowley, Haughey,
              Hanson, Toole & Dietrich, Billings, Montana, for
              Janet E. Eschler

                           Submitted on Briefs:   November 12, 1992

                                     Decided:   March 26, 1993

Filed:

_____
                  Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from the Thirteenth Judicial District Court, County of Yellowstone, of two orders granting summary judgment to the Defendant. We affirm.

The sole issue on appeal is whether the District Courts erred in granting summary judgments in favor of the Defendant Janet Eschler (Defendant).

Janet and James Eschler (Eschler) were divorced in August of 1989 after approximately 16 years of marriage. Although there were no children born of this marriage, James Eschler had three children from a previous marriage. At the time of his death, October 2, 1989, James Eschler was engaged to be married to Sharon Ille (Ille).

Defendant was the named beneficiary of three of Eschler's life insurance policies at the time of his death. Two policies were issued by Minnesota Mutual Life Insurance Company (Minnesota Mutual), one dated January 1, 1980 for the amount of $50,000 and one dated December 1, 1983 for the amount of $100,000. In 1986, he purchased a $75,000 life insurance policy from Mutual Benefit Life (Mutual Life).

Shortly before Eschler and Defendant's dissolution was final, Eschler requested a change of beneficiary form for his two Minnesota Mutual insurance policies and the company forwarded the required forms. The forms were sent with specific instructions which stated in part:

Here is the Change of Beneficiary form which you recently

2

requested for the above numbered policy. Please complete, date, and sign this form and return all copies in the envelope provided...When the form is received in our office, it will be endorsed and a copy will be returned to you for attachment to the above numbered policy.

Eschler filled out part of the forms providing for change of beneficiary. He wrote the names of his children as the new beneficiary under the $50,000 policy and the name of his fianceé, Sharon Ille, as the primary beneficiary and his three children as contingent beneficiaries on the $100,000 policy. However, Eschler did not provide the required addresses and social security numbers of the new beneficiaries nor did he sign or date the forms. They were never mailed to Minnesota Mutual. These forms were found among Eschler's personal effects after his death.

On August 7, 1989, Eschler purchased a new life insurance policy from Mutual Benefit for $100,000 naming Ille, his fiancee as the primary beneficiary and his children as contingent beneficiaries. On August 8, 1989, Eschler increased the amount of the policy to $250,000 and this change became effective on September 14, 1989. On September 21, 1989, he changed the beneficiary designation. Ille was to receive forty percent of the proceeds of the $250,000 and each of his children was to receive twenty percent of the total proceeds.

Eschler made no changes on his other Mutual Benefit policy, which named Janet Eschler the beneficiary of the policy for $75,000. However, he did not make the premium payment due on this policy on August of 1989.

Eschler's death from suicide on October 2, 1989 left the

3

payment on these four insurance policies somewhat open to question. Mutual Benefit did not pay on the $250,000 policy because of a suicide exclusion clause. Ille and the Eschler children dispute the claim that Janet Eschler is the beneficiary of the remaining three insurance policies.

"Under Rule 56(c), M.R.Civ.P., summary judgment is proper if the record discloses no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." Kaseta v. N. Western Agency of Gr. Falls (1992), 252 Mont. 135, 138, 827 P.2d 804, 806. "[O]ur standard of review relating to conclusions of law...is whether the tribunal's interpretation of the law is correct." Steer Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-475, 803 P.2d 601, 603.

Ille and the Eschler children make three arguments as to why they are the beneficiaries of the insurance policies which remain valid. First, they assert the property settlement agreement, incorporated into the decree at the dissolution of Defendant and Eschler's marriage, terminated Defendant's rights as the beneficiary of the life insurance policies. Second, they argue that the fact that Eschler filled in the names of the new beneficiaries on the change of beneficiary forms, evidenced an intent by Eschler sufficient to change the beneficiary of the two Minnesota Mutual insurance policies. Third, Ille and the Eschler children argue that when Eschler purchased the $75,000 Mutual Life insurance policy, he actually designated himself, the owner as the beneficiary, and not Defendant. If he was the designated

4

beneficiary, the proceeds of the policy would pass through his estate to Ille and the Eschler children.

Plaintiffs contend that the trial courts were premature in granting summary judgment in favor of the defendant because the property settlement agreement gives rise to a question of material fact on the issue of who is the rightful beneficiary. They claim that Soha v. West (1981), 196 Mont. 95, 637 P.2d 1185, establishes the rule of law that a general property settlement agreement gives rise to this question of material fact.

In Soha, Frederick Soha and Cynthia West were married and lived together as husband and wife for 79 days. They separated shortly thereafter and executed a property settlement and separation agreement which was later incorporated into their decree of dissolution. The agreement contained a mutual release that stated:

> In consideration of the execution of this agreement, and the terms and conditions thereof, each party hereto releases and forever discharges the other party, his or her personal representative, and assigns from any and all right, claims, demands and obligations except as herein specifically provided and each party is forever barred from having or asserting any such right, claim, demand or obligation at any time hereafter for any purpose...

Soha, 637 P.2d at 1187. The settlement agreement contains a full disclosure provision which states:

> Each of the parties hereto represents and warrants to the other as an integral part of this agreement that there has been a full disclosure of assets between parties.

Soha, 637 P.2d at 1187. Frederick Soha never told his wife about the life insurance policy nor did he tell her that she was the

5

primary beneficiary.

Several months later, Frederick Soha died in an accident, leaving behind the life insurance policy naming Cynthia West as the primary beneficiary and Frederick's parents as contingent beneficiaries. This Court, in reversing the trial court's grant of summary judgment for Cynthia West, determined that the "intent of the decedent as to the effect of the policy beneficiary designation in the light of the property settlement agreement" is a question of fact. Soha, 637 P.2d at 1187. The Court also stated that Frederick's failure to reveal the presence of the insurance policy may have been a breach of the full disclosure provision. Therefore, the Court concluded that the trial court needed to conduct further proceedings to determine the nature and extent of the parties' consents to the property settlement agreement.

The present case differs from Soha in three minor respects. First, the Sohas lived together as husband and wife for only 79 days whereas the Eschlers were married for 16 years. Second, Cynthia West was unaware of an insurance policy naming her as the beneficiary but Janet Eschler was fully aware of the three insurance policies naming her as primary beneficiary.

The third difference is the mutual release clauses in the two settlement agreements. The Sohas had a very general property settlement agreement with a general mutual release clause. The only specific asset listed was the house Frederick Soha purchased before he married Cynthia.

Janet and James Eschler had a very detailed property

6

settlement agreement, plus the general release clauses. The agreement contains an itemized division of real property, automobiles, retirement accounts, debt liability and articles of personal property.

The following are the general release clauses:

5. Waiver of Property Rights. All property and money received by the parties pursuant hereto shall be the separate property of the respective parties, free and clear of any right, interest, or claim of the other party, and each party shall have the right to deal with, and dispose of, his or her separate property, both real and personal, as fully and effectively as if the parties had never been married.

6. Waiver of Support Rights. Except as expressly provided in Paragraph 3 of this Agreement, each party shall be fully released by the other from any obligation for alimony, support, maintenance, attorney's fees, or court costs, and each party accepts the provisions herein in full satisfaction of all property rights and all obligations for support or otherwise arising out of the marital relationship of the parties. Each party, except with respect to payments accruing hereunder, hereby releases the other party and his or her respective legal representatives, successors, and assigns, from any claim of any kind, and specifically relinquishes any right, title, or interest in or to any earnings, accumulations, future investments, money, or property of the other party.

7. Waiver of Rights to Estate, Etc. Except as set forth herein, each of the parties waives all rights of inheritance in the estate of the other, any right to elect to take against the Will of the other, and the right to act as executor or administrator of the Will or estate of the other party. The Wife expressly waives the right to claim or receive family allowance from the estate of the Husband. Each of the parties waives any additional rights which such party has, or may have, by reason of their marriage, including rights of dower or curtesy, except the rights saved or created by the terms of this Agreement.

. . .
9. Mutual Release and Division of Debts. In consideration of the execution of this Agreement and other terms and conditions thereof, each of the parties hereto releases and forever discharges the other party, his or her personal representatives and assigns, from any and all rights, claims, demands, and obligations, except

7

as herein specifically provided; and each party is forever barred from having or asserting any such rights, claims, demands, or obligations at any time for any purpose. It is hereby agreed that the personal obligations hereinabove set forth and the personal obligations hereinafter incurred by the parties shall be and remain their respective obligations, and each party shall pay and hold the other free and harmless from any obligations or bills for merchandise or services subsequent to date of Decree.

. . .

15. Entire Agreement. The parties hereto understand and agree that this written Agreement represents the entire agreement between the Wife and Husband; and further, that there are no promises, agreements, understandings, or representations of any kind other than those contained herein.

Although there were conflicting affidavits from both parties concerning Eschler's intent in signing the property settlement, there is no mention anywhere in the settlement agreement about any insurance or any of the insurance policies, even though both parties knew the policies to be assets of the marriage. In both this case and Soha, there is no mention of insurance assets.

The parties have also put forward positions relative to the effect of a property settlement agreement on a beneficiary designation as discussed in Sowell v. Teachers' Retirement System (1984), 214 Mont. 200, 693 P.2d 1222, although the action concerned teacher retirement benefits. The decedent's widow brought an action to declare her rights under retirement and death benefits for an account initiated by the decedent when he was married to his first wife. The Court concluded that the decedent's ex-wife should receive his retirement benefits because she was nominated by a written designation filed with the retirement board. This conclusion was reached even though she and the decedent executed a

8

property settlement agreement.

The Court noted that the general release language in the agreement did not "specifically cover Carolyn's inchoate right to acquire property upon the happening of a future event." Sowell, 693 P.2d at 1224. The Court distinguished Soha because, although the release language was similar in both property settlement agreements, the teacher retirement benefits were to be paid according to a specific statute, which provided that the benefits be paid to the estate or the beneficiary designated by the retirement and death benefit application. The Court also noted that Mr. Sowell had done nothing to indicate an intent to change the beneficiary designation.

The present issue is whether Defendant contracted away her interest as beneficiary on Eschler's life insurance policies when she entered into the property settlement agreement. Girard v. Pardun (S.D. 1982), 318 N.W.2d 137. Girard cites the general rule in such cases:

> In consequence of the fact that ordinarily divorce does not affect the right of the named beneficiary, it follows that where the husband does not change the beneficiary of his policy after having been divorced, the divorced wife is entitled to the proceeds of the policy upon the death of the insured.
>     The divorced wife may, however, have surrendered her right as beneficiary by a property settlement agreement, which may or may not have been incorporated into the decree of divorce. For example, a divorce decree specifically awarding the husband all insurance policies on his life divested the wife of any interest she might have as a beneficiary under a policy conceded to be community property. Likewise, where the property settlement agreement contemplated a disposition of all property rights and other matters and specifically described a life policy in which the wife was beneficiary and stated that the husband was to receive the policies

9

free and clear of any claims of the wife thereto, the wife waived and relinquished all right to the insurance proceeds of the policy in which she was beneficiary and that divestment was complete when the agreement was executed and incorporated into the divorce decree, notwithstanding that at the time of the insured's death the wife was still the designated beneficiary.

. . .

Moreover, while a settlement agreement may require the beneficiary wife to surrender or 'turn over' the policy to the insured, that fact alone does not destroy her right as beneficiary where the insured thereafter did not change her designation as beneficiary.

Whether a property settlement agreement should be deemed to bar the divorced wife is a question of the construction of the agreement itself. Where there is no provision that the effecting of the settlement agreement should deprive her of her rights as named beneficiary and she in fact remains named as beneficiary, the settlement agreement will not be given a broader scope than its express terms specify and she will not be barred from her right as the named beneficiary.

Girard, 318 N.W.2d at 138-139. (Emphasis in original.) (Citation omitted.) The Girard Court continued,

The agreement does not contain a renunciation of her expectancy in the policy and, absent such a specific disclaimer, we will not construe the agreement so as to include a renunciation of her right to take as beneficiary under the policy. It is not the duty of the court to make new contracts for the parties, but merely to interpret the one as written. The agreement has no application to the policy itself.

Girard, 318 N.W.2d at 139. (Emphasis in original.) (Citation omitted.)

Defendant here claims that the property settlement agreement did not divest her of her right to the proceeds of the policies. We agree with the Defendant. As the District Court stated: "No specific mention is made in the settlement agreement of any life insurance of either of the parties or beneficiary designations related to life insurance policies." We agree with the logic in

10

<u>Girard</u> and conclude that a mutual release, which does not mention insurance, in a property settlement agreement, does not divest a former spouse of the right to the proceeds of insurance policies when the former spouse is the named beneficiary of an insurance policy.   As  in  <u>Sowell</u>,  the  Defendant  did  not  relinquish  her "inchoate right to acquire property upon the happening of a future event."   <u>Sowell</u>, 693 P.2d at 1224.

A cogent statement of the policy reasons for this conclusion is contained in Nunn v. Equitable Life Assur. Society, Etc. (N.D. 1979), 272 N.W.2d 780, which states:

> The plaintiff is in this case arguing that in effect the person entitled to the proceeds of the policy is <u>whoever the decedent intended it to be</u>, even if not the named beneficiary. It requires little imagination to envision the mischief that would be caused by the adoption of such a rule.   Disputes among friends, relatives, and heirs of the decedent would be a regular occurrence.   Insurance companies presumably invariably deposit the proceeds in court because they could not rely on their records.   The adoption of such a rule, in the long run, would be detrimental to the administration of justice, just as it would be if permitted in the case of wills or land transfers.
> It should also be observed that we are not dealing here with a situation in which the decedent did anything within his power to effectuate his intention.   The problem was caused by the decedent's own carelessness. It would have been a simple matter for him to determine who was, in fact, the beneficiary of the policy.   The result may be unfortunate, but that condition alone no more furnishes justification for the Court to intervene than it would in the case of errors of judgment or frustrated  expectations  in  the  case  of  contracts generally.

<u>Nunn</u>, 272 N.W.2d at 781-782.   (Emphasis in original.)   We find these reasons apply to the present action as well.

<u>Soha</u>  is  expressly  overruled  on  this  point.    See  also; Prudential Ins. Co. v. Weatherford (Or. 1980), 621 P.2d 83; Nichols

11

v. Nichols (Texas 1987), 727 S.W.2d 303.

Plaintiffs' second contention is that the fact that Eschler filled in the names of the new beneficiaries on the change of beneficiary forms for the Minnesota Mutual policies evidences an intent sufficient to change the beneficiaries on the two policies.

> The view taken by the majority of courts is that a change of beneficiary can be effected without complete compliance with the provisions of the policy regarding notice and endorsement. The courts upholding this view accept substantial compliance as a sufficient standard for determining whether a valid change of beneficiary has been effected....The test to establish whether substantial compliance has been satisfied has two prongs: There must be evidence that (1) the insured had determined to change the beneficiary, and (2) that the insured had done everything to the best of his ability to effect the change.

IDS Life Ins. Co. v. Estate of Groshong (Idaho 1987), 736 P.2d 1301, 1303 (citations omitted). See also Bell v. Criviansky (1934), 98 Mont. 109, 37 P.2d 673.

In Bell, the Court concluded that the insured had substantially complied with the provisions of the policy to change the beneficiary designation on his insurance policy when he had requested the forms from the insurance company but fell seriously ill and died of a brain tumor before he could complete and return the change of beneficiary form. In concluding that he had changed the beneficiary designation, the Court stated:

> We think the true rule is that, if the insured has pursued the course pointed out by the laws of the association and has done all in his power, under the facts and circumstances of the case, to change the beneficiary, but before the new certificate is actually issued or the change of beneficiary is indorsed on the old, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued or the indorsement made.

12

<u>Bell</u>, 37 P.2d at 678. See also; Prudential Ins. Co. of America v. Cooper (D. Idaho 1987), 666 F. Supp. 190, 192; Bergen v. Travelers Ins. Co. of Illinois (Utah App. 1989), 776 P.2d 659, 663; IDS Life Ins. Co. v. Estate of Groshong (Idaho 1987), 736 P.2d 1301, 1303; Manhattan Life Insurance Company v. Barnes (9th Cir. 1972), 462 F.2d 629, 631.

Eschler's actions do not evidence a sufficient determination to change the beneficiary designation, or that he substantially complied with the requirements to change the designation.

Eschler had the change of beneficiary forms in his possession for approximately 6 months. There was no evidence that he was unable to complete the forms and return them to the company unlike the insured in <u>Bell</u>. We conclude that Eschler did not do everything he could have done to change the beneficiaries.

Plaintiffs' final argument concerns the $75,000 policy for which plaintiffs believe the estate is the beneficiary. Section 8 of the application form requests a beneficiary designation. The potential insured may choose the owner of the policy as beneficiary or may fill in the blank immediately below to name the beneficiary. Also, the applicant may mark an "X" in the box next to choice 1, the owner, or the second choice, the blank space filled in by the applicant. In Eschler's case, he filled in the following in the blank space: "Janet Eschler, wife, if living, if not surviving children share alike." (This was handwritten by insurance agent Mr. Solie as he recorded Eschler's answers at the time of the application.)

13

However, there is an "X" in box 1 next to the designation, "the owner", but no "X" next to Eschler's handwritten designation of Defendant as the primary beneficiary. Defendant provided the affidavit of Robert Solie, the sales agent from Mutual Benefit who sold the policy to Eschler in 1986 to explain the presence of the "X" in box 1. He states that Eschler wished to name his wife Janet Eschler, as the primary beneficiary, and his children as contingent beneficiaries. In addition, the "X" marked in box 1 of the beneficiary designation (for "the owner") is a clerical error made by Mr. Solie. Eschler did not ask that he be made the beneficiary of the policy nor were the proceeds to go to his estate.

In motions for summary judgment, if the moving party shows the absence of genuine factual issues, the non-moving party must set forth facts demonstrating that a genuine issue exists. Grenz v. Medical Management Northwest (1991), 250 Mont. 58, 62, 817 P.2d 1151, 1154. Defendant brought forth evidence in the form of Mr. Solie's affidavit, to prove that Defendant was the intended beneficiary of the $75,000 Mutual Benefit policy. The burden then shifted to the plaintiffs to demonstrate that a genuine issue existed concerning the beneficiary of the policy. However, the plaintiffs brought forth no evidence to counter Defendant's contention and summary judgment was appropriately granted on this issue.

The District Court orders granting Janet Eschler's motions for summary judgment are affirmed. AFFIRMED.

_____
Justice

14

We Concur:

_____
Chief Justice

_____

_____
Justices

15

March 26, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Jerome J. Cate
Cate Law Firm
P.O. Box 3274
Billings, MT 59103-3274

Allen D. Gunderson
Gunderson Law Firm
P. O. Box 926
Billings, MT 59103

Brent R. Cromley
Moulton, Bellingham, Longo & Mather
1900 Sheraton Plaza, P.O. Box 2559
Billings, MT 59103-2559

Donald L. Harris and Steven R. Milch
Crowley, Haughey, Hanson, Toole & Dietrich
P.O. Box 2529
Billings, MT 59103-2529


Don M. Hayes
Herndon, Hartman, Sweeney & Halverson
P.O. Box 80270
Billings, MT 59108-0270

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
     Deputy