OP 12-0408

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 13

THRIVENT FINANCIAL FOR LUTHERANS,

        Plaintiff-Appellee,

    v.

LUCIA E. ANDRONESCU, FKA Lucia E. Anderson,

        Defendant-Cross-defendant-Appellee,

    v.

JOHANNA M. ANDERSON,

        Defendant-Cross-claimant-Appellant.


| | |
|---|---|
| APPEAL FROM: | Certified Question, U.S. Court of Appeals for the Ninth Circuit<br>Cause No. 11-35437 |

COUNSEL OF RECORD:

      For Appellant:

          Roberta Anner-Hughes; Anner-Hughes Law Firm; Billings, Montana

      For Appellee:

          Gary Zadick; Ugrin, Alexander, Zadick & Higgins, PC; Great Falls,
          Montana


                         Submitted on Briefs:  November 7, 2012

                                 Decided:  January 22, 2013

Filed:

_____
                       Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 We accepted the following certified question from the U.S. Court of Appeals for the Ninth Circuit, which we have reformulated in accordance with M. R. App. P. 15(4) and our order of July 17, 2012:

¶2 *Does § 72-2-814, MCA, apply to a life insurance policy owner's designation of his spouse as the beneficiary, where the parties were later divorced prior to enactment of § 72-2-814, MCA, and the policyholder died after enactment of the statute?*

¶3 Our answer is "yes" because § 72-2-814, MCA, operates at the time of the insured's death and applies to any divorce that took place during the insured's lifetime.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 We summarize the undisputed facts from the Ninth Circuit's certification order. In August 1990, Brent Anderson (Brent) purchased life insurance from Thrivent Financial for Lutherans and named the following beneficiaries: first, his then-wife Lucia, second, his parents, and third, his sister. In June 1993, Brent and Lucia divorced in Arizona. Brent was awarded his life insurance policy in the divorce decree. Later that same year, in October 1993, § 72-2-814, MCA, became effective in Montana.[1] The statute provides that a divorce revokes "any revocable disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument[.]" Section 72-2-814(2)(a)(i), MCA.

¶5 Brent died in Montana in August 2010. He had never changed his designation of Lucia as primary beneficiary under his life insurance policy. Thrivent filed an

---

[1] Section 72-2-814, MCA, was enacted during the 1993 legislative session and became effective on October 1, 1993, because the statute did not provide a different effective date. Section 1-2-201(1)(a), MCA.

2

interpleader action to determine the rightful beneficiary under Brent's policy. The U.S. District Court for the District of Montana granted judgment on the pleadings in favor of Lucia, based in part on the fact that § 72-2-814, MCA, became effective after Brent and Lucia's divorce.

## STANDARD OF REVIEW

¶6 When answering a certified question as permitted by M. R. App. P. 15(3), this Court's review is "purely an interpretation of the law as applied to the [pertinent] facts underlying the action." *BNSF Ry. Co. v. Feit*, 2012 MT 147, ¶ 6, 365 Mont. 359, 281 P.3d 225 (quoting *State Farm Fire & Cas. Co. v. Bush Hog, LLC*, 2009 MT 349, ¶ 4, 353 Mont. 173, 219 P.3d 1249).

## DISCUSSION

¶7 Our precedents establish that the interest of an insurance policy beneficiary is like that of a legatee under a will—"a mere expectancy of a gift at the time of the insured's death." *In re Guardianship & Conservatorship of Anderson*, 2009 MT 344, ¶ 23, 353 Mont. 139, 218 P.3d 1220 (quoting *Grimm v. Grimm*, 157 P.2d 841, 842-43 (Cal. 1945)); *see also Feely v. Lacey*, 133 Mont. 283, 297, 322 P.2d 1104, 1111 (1958). A life insurance policy owner, like a testator, may alter or revoke designations at any time until death; thus, either instrument—whether will or insurance policy—must be interpreted and applied at death in order to effectuate the transferor's final intent.

¶8 The Official Comments to § 72-2-814, MCA, support the conclusion that the life insurance policy, like a will, is not given effect until the time of death. Montana adopted the revocation-upon-divorce statute from the Uniform Probate Code (UPC) in order to

3

"unify the law of probate and nonprobate transfers." Tit. 72, ch. 2, Mont. Code Ann., *Annotations*, Official Comments at 635 (2012). The Comments indicate that the revocation statute operates at the time the "governing instrument is given effect" and the provision to the former spouse is to be treated "as if the divorced individual's former spouse (and relatives of the former spouse) disclaimed the revoked provisions[.]" Tit. 72, ch. 2, Mont. Code Ann., *Annotations*, Official Comments at 636 (2012).

¶9 The Comments reference two law review articles that provide "[t]he theory of this section[.]" *See* Tit. 72, ch. 2, Mont. Code Ann., *Annotations*, Official Comments at 636 (2012) (citing Lawrence W. Waggoner, *The Multiple-Marriage Society and Spousal Rights Under the Revised Uniform Probate Code*, 76 Iowa L. Rev. 223 (1991) and John H. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harv. L. Rev. 1108 (1984)). The articles discuss the history and purpose of revocation-upon-divorce statutes and confirm that, under those statutes, life insurance is to be treated in the same manner as a will. According to Langbein:

> The label aside, life insurance is functionally indistinguishable from a will, for it satisfies the twin elements of the definition of a will. We say that a will is revocable until the death of the testator and that the interests of the devisees are ambulatory—that is, *nonexistent until the testator's death*. Unless specially restricted by contract, the life insurance beneficiary designation operates identically.

Langbein, 97 Harv. L. Rev. at 1110 (emphasis added).

¶10 This commentary is consistent with the interpretation of other jurisdictions that apply the revocation-upon-divorce statute as a rule of construction at the time the governing instrument is given effect. *See e.g. Buchholz v. Storsve*, 740 N.W.2d 107, 111

4

(S.D. 2007); *Stillman v. Teachers Ins. & Annuity Assn. College Ret. Equities Fund*, 343 F.3d 1311, 1317-18 (10th Cir. 2003) ("Revocation-upon-divorce statutes 'reflect the legislative judgment that when the transferor leaves unaltered a will or trust or insurance beneficiary designation in favor of an ex-spouse, this failure to designate substitute takers more likely than not represents inattention rather than intention.'") (quoting *Statement of the Joint Editorial Board for Uniform Probate Code Regarding the Constitutionality of Changes in Default Rules as Applied to Pre-existing Documents* at 3-4 (1991)).[2]

¶11  Lucia argues that revoking her status as beneficiary would require impermissible retroactive application of the law.  Section 1-2-109, MCA ("No law contained in any of the statutes of Montana is retroactive unless expressly so declared.").  A statute is retroactive if it "takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability, in respect to transactions already past." *Allen v. A. Richfield Co.*, 2005 MT 281, ¶ 16, 329 Mont. 230, 124 P.3d 132 (quoting *Williams v. Wellman-Power Gas, Inc.*, 174 Mont. 387, 390, 571 P.2d 90, 92 (1977)); *see also Porter v. Galarneau*, 275 Mont. 174, 183, 911 P.2d 1143, 1150 (1979).  A statute is not given retroactive effect "merely because it is applied in a case arising from conduct antedating the statute's enactment." *Porter*, 275 Mont. at 183, 911 P.2d at 1148.

---

[2] Both South Dakota and Utah law, construed in *Buchholz* and *Stillman*, respectively, include the UPC's "rule of construction" statute expressly providing that the law applies to governing instruments executed before its effective date.  *See* Utah Code Ann. § 75-2-1301(2); S.D. Codified Laws § 29A-8-101(b)(2).  Although Montana's code lacks the express statutory provision, the Official Comments nonetheless suggest that the statute operates at the time the instrument is given effect—i.e., upon death.  Tit. 72, ch. 2, Mont. Code Ann., *Annotations*, Official Comments at 636 (2012).

¶12 Because § 72-2-814, MCA, operates at the time of the transferor's death, the statute is not given retroactive effect when applied to a divorce predating its enactment. Prior to Brent's death, Lucia had no vested rights in the proceeds of his insurance policy. *Anderson*, ¶ 23. Instead, her property interest was equivalent to that of a devisee under a will—"ambulatory" and "nonexistent." Langbein, 97 Harv. L. Rev. at 1110. The operation of the revocation-upon-divorce statute therefore does not "impair[] vested rights" and did not result in a different legal effect from that which the transaction had under the law at the time it occurred. *Porter*, 275 Mont. at 183, 911 P.2d at 1148-49. The designation of Lucia as beneficiary had no legal effect before the date of Brent's death.

¶13 Lucia also points out the U.S. District Court's reliance on *Eschler v. Eschler*, 257 Mont. 360, 849 P.2d 196 (1993), a case decided prior to the effective date of § 72-2-814, MCA, which held that the life insurance policyholder's designation of his wife as beneficiary was not revoked by subsequent divorce. There, the insured died having begun, but not completed, the necessary paperwork to change his policy beneficiary and we determined that his "actions do not evidence a sufficient determination to change the beneficiary designation[.]" *Eschler*, 257 Mont. at 369, 849 P.2d at 202. *Eschler* does not apply here because § 72-2-814, MCA, establishes the insured's intention to revoke an ex-spouse's beneficiary status and would have affected the analysis in that case. *Eschler*, moreover, is not relevant to the question certified for our review—whether the revocation-upon-divorce statute applies to a divorce that pre-dates the statute's

6

enactment. The language of § 72-2-814, MCA, and the authorities we discuss address that question and direct us to answer in the affirmative.

/S/ Beth Baker

We concur:

/S/ Mike McGrath
/S/ Michael E Wheat
/S/ Patricia O. Cotter
/S/ Jim Rice