JUSTICE McKINNON,
dissenting.
¶62 I disagree with the Court’s decision on multiple grounds.
¶63 Preliminarily, the Court has not accorded proper deference to a trial court’s decision in matters of equity where there is no dispute of fact and the trial court has correctly applied the law. Although the District Court’s decision was rendered pursuant to summary judgment in a case of equity, see § 3-2-204, MCA, the decision of whether a constructive trust should be created; what, if anything, should be done for violation of an economic restraining order in a dissolution proceeding; and the remedy for failing to disclose a marital asset are all firmly committed to the discretion of the trial court for which an abuse of discretion must be found. Here, there were no disputed facts and the law — specifically § 40-4-252(4), MCA, and Briese, ¶ 39 — allowed the trial court discretion in fashioning an appropriate remedy. In Briese, we specifically rejected a per se rule that automatically voids changes made in violation of an economic restraining order, holding that equitable principles should govern rather than a bright-line rule that beneficiary changes, as a matter of law, are void. Briese, ¶ 40 (“Other courts, while holding that the violation does not serve to automatically void the beneficiary change, generally have found that courts have the authority to grant some form of relief through use of their powers of equity.”). Pursuant to § 40-4- *403 202, MCA, a district court has broad discretion to distribute a marital estate equitably according to the circumstances of the case and, absent clearly erroneous findings, “we will affirm a trial court’s property distribution unless the court abused its discretion.” Marriage of Gebhart, 2003 MT 292, ¶ 16, 318 Mont. 94, 78 P.3d 1219. In my view, we have failed to account for the discretion of the trial court in our standard of review. The District Court presided over the dissolution, the probate, and claims of unjust enrichment and creation of a constructive trust. I would accord the trial court considerable latitude and discretion in applying and formulating an equitable remedy, and the trial court’s decision should not be overturned in the absence of an abuse of discretion. See Rawlings v. Rawlings, 2010 UT 52, ¶ 21, 240 P.3d 754 (2010).
¶64 The decision reached by the Court reforms the Marital Settlement Agreement, ignores the Final Parenting Plan, and invalidates life insurance contracts. The principal issue before the Court is whether a constructive trust should be imposed on $2,306,103.13 for the benefit of RBV, because V alerie was unjustly enriched when she received Roy’s life insurance proceeds due to the fact that: (1) Roy violated the TRO by changing beneficiaries of two life insurance policies; (2) Roy failed to execute a will giving all of his assets to RBV; and, alternatively, (3) Roy failed to disclose Policy 799 as an asset during their divorce.
¶65 It is undisputed that Roy violated the economic TRO by changing his beneficiary designations in two term life insurance policies during the pendency of his dissolution proceeding and while the economic TRO was in effect. The issue, however, is whether Valerie — who was not a party to the dissolution proceeding — has been unjustly enriched. It is the third element of the test for unjust enrichment set forth in N. Cheyenne Tribe which is at issue in these proceedings: whether “the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.” N. Cheyenne Tribe, ¶ 36. The imposition of a constructive trust serves as a possible remedy to rectify the unjust enrichment of a party. Accordingly, it must be inequitable for Valerie to retain the benefit of Roy’s life insurance proceeds.
¶66 In Briese, the husband died while the divorce was pending and the economic TRO was in effect. We stated in Briese that the purpose of an economic restraining order in a dissolution proceeding is to “maintain the status quo” of the parties “so long as a dissolution action is pending.” Briese, ¶ 25. An economic restraining order “mitigates the potential harm to spouses and children caused by the dissolution *404 process itself and ensures that reasonable provision is made for the spouse and children during the litigation.” Briese, ¶ 25. In fashioning an appropriate equitable remedy for a violation, a trial court must be cognizant of these principles and considerations.
¶67 We revisited the issue in In re Estate of Corrigan, 2014 MT 337, 337 Mont. 364, 341 P.3d 623, when the husband died prior to the dismissal of the dissolution proceeding. We held that the husband’s failure to serve his wife with the dissolution petition and accompanying economic TRO within the three-year deadline for service of pleadings set forth in M. R. Civ. P. 4(t)(l) rendered the economic TRO ineffective after the three-year deadline lapsed. In re Estate of Corrigan, ¶ 21. Because the TRO was no longer effective, we refused to void the husband’s change in beneficiary designation to his adult children from his wife, finding Briese distinguishable because it involved “an active and ongoing divorce proceeding.” In re Estate of Corrigan, ¶ 21. We explained that “in Briese we declined to adopt a rule that would automatically void any change of beneficiary made by a decedent in violation of a divorce TRO. Rather, we gave the district court the discretionary authority to void such a change if equitable principles demanded it.” In re Estate of Corrigan, ¶ 20 (internal citation omitted).
¶68 Here, Roy’s death occurred after the divorce was finalized and the economic TRO had been dissolved. Once the TRO was dissolved, the District Court recognized that Roy would have been free to change his beneficiaries at any time. Pursuant to § 72-2-814 (2)(a)(i), MCA, Pamela, as an ex-spouse, would have been removed as a beneficiary of any of Roy’s life insurance policies as a matter of law. Therefore, while a change of beneficiary may have been voidable up until the dissolution was final, upon the economic TRO being dissolved there were no restraints on Roy’s ability to change the beneficiary. The District Court properly factored these considerations into its decision to deny Pamela equitable relief, finding that Roy’s change of beneficiary was evidence of his intent to make Valerie the beneficiary of his life insurance. Contrary to the Court’s conclusion, the fact that Roy actually did change his beneficiary requires no speculation about Roy’s intent and that he would have effectuated that intent subsequently through executing a valid change of beneficiary. The District Court, unlike this Court, refused to speculate that Roy would not have followed through with a change when it concluded that Roy obviously intended Valerie to be the beneficiary having made no further changes after dissolution or the lifting of the economic TRO. The District Court observed that Valerie was not a party to the dissolution proceeding and, therefore, it was not “inequitable” for her to receive the proceeds which Roy *405 obviously intended her to have and which had been memorialized in an insurance contract. This Court has not found the District Court’s refusal to speculate or its findings regarding Roy’s actions clearly erroneous.
¶69 Unjust enrichment is “the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant.” Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. a (2011); see also § 72-38-123, MCA. We relied upon 66 American Jurisprudence 2d Restitution and Implied Contracts § 11 (1973) in N. Cheyenne Tribe to establish the elements of unjust enrichment. N. Cheyenne Tribe, ¶ 39. “The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.” 66 Am. Jur. 2d Restitution and Implied Contracts § 11 (emphasis added). Thus, to permit recovery on a theory of quasi contract where a written agreement exists would constitute a reformation of the contract and subversion of principles of law relating to contracts. A life insurance policy is issued pursuant to a contract. Moreover, “[a] life insurance policy owner, like a testator, may alter or revoke designations at any time until death; thus, either instrument — whether will or insurance policy — must be interpreted and applied at death in order to effectuate the transferor’s final intent.” Thrivent Fin. For Lutherans v. Andronescu, 2013 MT 13, ¶ 7, 368 Mont. 256, 300 P.3d 117. The District Court determined that Valerie had not been unjustly enriched when she received proceeds pursuant to a valid insurance contract. The District Court did not make an incorrect conclusion of law or clearly erroneous factual finding in doing so.
¶70 The MSA, by its plain terms, provides that Roy was to execute a will making his son the beneficiary of his estate, not his life insurance. Life insurance proceeds are non-testamentary in nature and pass outside of the estate in accordance with the wishes of the insured. Section 72-6-111, MCA. Neither the MSA nor the Parenting Plan include any provision that states either party agreed to procure or maintain a life insurance policy for the benefit of anyone. Although it is common for marital settlement agreements or parenting plans to contain agreements requiring the procurement and maintenance of a life insurance policy with minor children, as an aspect of child support, designated as beneficiaries, neither the MSA nor Parenting Plan here mention anything about life insurance. In fact, although Pamela was aware of at least one of Roy’s life insurance policies she chose not to *406 pursue Roy’s life insurance in the MSA. The District Court recognized that although Roy was required to make a will naming RBV as the beneficiary of his estate, Roy failed to do so prior to his untimely death. The District Court attempted to ascertain the intent of the parties when entering into the MSA and determined that it was not the parties’ intention to include Roy’s insurance policies in the MSA or the Parenting Plan. Given the provisions of § 72-6-111, MCA, and that the policy that was disclosed was given to Roy in the MSA, I agree with the District Court that Roy’s failure to make a will does not support a finding that Valerie has been unjustly enriched. The Court thus incorrectly concludes that Valerie was unjustly enriched because “Roy’s estate is unable to pay claims to his children or provide for their future as was intended and promised under the MSA and the parenting agreement providing for Saraya.” Opinion, ¶ 47. Such a conclusion confuses principles of contract, the District Court’s findings of fact, and relevant statutory provisions.
¶71 As the Court appears to restrict its analysis only to Roy’s violation of the economic TRO, I will not address whether a term life insurance policy is an “asset” with a cash value and whether it was required to be disclosed or whether it would have been significant to the parties in negotiating their marital property settlement. I would affirm the District Court’s decision by applying a correct standard of review and the principle that the District Court be afforded latitude in fashioning an appropriate equitable remedy for violation of one of its orders.
¶72 I dissent.